# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NORTH DAKOTA

In re:

Twin Falls Oil Service, LLC,

                Debtor.[1]

Case No.: 24-30525
Chapter 11 Case

## MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

      1.      Twin Falls Oil Service, LLC (the "Debtor") hereby files this Motion for Order Authorizing the Use of Cash Collateral (the "Motion"). This Motion should be granted because the Debtor requires the use of cash collateral to ensure its continued operations during the pendency of this case.

      2.      In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

      3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Fed. R. Bankr. P. 5005. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The petition commencing this Chapter 11 case was filed on December 11, 2024 (the "Petition Date"). The case is currently pending before this Court.

      4.      This Motion arises under 11 U.S.C. §§ 105(a), 363, and 364 and Fed. R. Bank. P. 4001(b). This Motion is filed under Fed. R. Bankr. P. 9013 and 9014 and Local Rules 9013-1 and 9014-1. Notice of the hearing on this Motion is provided pursuant to the Federal Rules of

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtor's address is 360 102X Avenue SW, Killdeer, North Dakota 58640 and its Employer Identification Number (EIN) is 47-1883979.

Bankruptcy Procedure, the Notice and Service Requirements adopted pursuant to  Local Rule 2002-1.

### FED. R. BANKR. P. 4001(b)(1)(B) STATEMENT

5.      Pursuant to Fed. R. Bankr. P. 4001(b)(1)(B), the Debtor seeks to use cash in which First International, Samson, Quick Bridge, and the IRS, all as defined below, may assert a security interest (the "Prepetition Lenders"). The Debtor will use the cash collateral to continue its operations while pursuing a reorganization of its business. The Debtor requests authorization to use cash collateral through the week beginning on June 30, 2025.  As adequate protection, the Debtor proposes to grant the Prepetition Lenders replacement liens in their respective collateral to the extent of cash collateral used, maintain all insurance, and operate so as to preserve the value of the property of the estate.[2]

### BACKGROUND

6.      On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  The Debtor continues to operate its business as debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  There is presently no pending request or motion for the appointment of a trustee or examiner. An official committee of unsecured creditors has been appointed.

---

[2] The Debtor continues to review and evaluate the terms of the agreements with the Prepetition Lenders.  Nothing contained in this Motion or in any other pleading filed with the Curt regarding this case, including the granting of replacement liens, shall constitute any acknowledgement or agreement that the Prepetition Lenders hold valid liens on any property of the Debtor, including cash collateral. Nothing contained in this Motion or any other pleading file with the Court regarding this case, including the granting of any replacement liens, shall constitute a waiver of the Debtor's, or any other part-in-interest's, ability to avoid any such liens the extent permitted under the Bankruptcy Code and applicable North Dakota law.

7.    The Debtor provides crude oil, water, aggregate, and over-the-road hauling, as well as hydrovac winch services.

8.    Further background information about the Debtor is set forth in the Declaration of Jeffery Jacobson in Support of First Day Motions. (ECF No. 3.)

9.    On December 11, 2024, the Debtor filed a Motion for Order Authorizing the Use of Cash Collateral on an Interim and Final Basis (ECF No. 6, the "Original Motion"), which was served on all creditors. The Court held an interim hearing on the Original Motion on December 13, 2024 (ECF No. 25) and entered an interim order granting the Original Motion that same day. (ECF No. 29.) The Court entered a final order granting the Original Motion on December 30, 2024. (ECF No. 44.)

10.    On January 23, 2025, the Debtor filed a Supplemental Motion for Order Authorizing the Use of Cash Collateral seeking to use additional cash collateral in the approximate amount of $198,000 (ECF No. 62, the "Supplemental Motion"), which was served on all creditors. The Court held an interim hearing on the Supplemental Motion on January 29, 2025 (ECF No. 65) and entered an interim order granting the Supplemental Motion that same day. (ECF No. 73.) The Court entered a final order granting the Supplemental Motion on February 10, 2025. (ECF No. 79.)

11.    Between the Original Motion and the Supplemental Motion, the Debtor is currently authorized to use cash collateral through and including March 14, 2025. (*Id.*) Through this Motion, the Debtor seeks to extend its authorization to use cash collateral.

## I.    THE PREPETITION LENDERS.

### A.    First International Bank & Trust.

12.    First International Bank & Trust ("First International") loaned approximately $3,630,791.86 under various loan documents (collectively, the "First International Loan Documents").

13.    In the First International Loan Documents, the Debtor granted First International security interests in substantially all of the Debtor's assets, including the following:

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

(the "First International Collateral").

14.    With respect to the First International Collateral, First International filed an original financing statement with the Office of the North Dakota Secretary of State, File No. 23-001165018-9, on January 31, 2023.

15.     As of the Petition Date, the outstanding amount of the Debtor's obligations to First International under the First International Loan Documents totaled approximately $2,323,567 (the "First International Indebtedness").

**B.     Samson MCA LLC.**

16.     On April 7, 2023, Samson MCA LLC ("Samson") and the Debtor executed a certain Revenue Purchase Agreement (the "First Samson Agreement").  The First Samson Agreement requires the Debtor to pay $1,071,000 to Samson over the term of the agreement.

17.     On December 6, 2023, Samson and the Debtor executed a certain Sale of Future Receipts Agreement (the "Second Samson Agreement" and, together with the First Samson Agreement, the "Samson Agreements").  The Second Samson Agreement requires the Debtor to pay $825,000 to Samson over the term of the agreement.

18.     While the Samson Agreements are stylized as sale agreements of a percentage of the Debtor's accounts receivable, the Samson Agreements also contain terms similar to a secured loan transaction and Samson may assert a security interest in the Debtor's accounts receivable.

19.     With respect to the Samson Agreements, Samson, through C T Corporation System, filed an original financing statement with the Office of the North Dakota Secretary of State, File No. 24-001416778-2, on October 2, 2024, identifying the following collateral:

> ALL DEBTOR'S PRESENT AND FUTURE ACCOUNTS AND THE DIRECT AND INDIRECT PROCEEDS THEREOF. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

20.    As of the Petition Date, the outstanding amount of the Debtor's obligations to Samson under the Samson Agreements totaled approximately $927,382.30 (the "Samson Indebtedness").

**C.    Quick Bridge Funding, LLC.**

21.    On March 13, 2024, Quick Bridge Funding, LLC ("Quick Bridge") and the Debtor executed a certain Purchase and Sale of Future Receivables (the "First Quick Bridge Agreement"). The First Quick Bridge Agreement requires the Debtor to pay $387,000 to Quick Bridge over the term of the agreement.

22.    On August 15, 2024, the Debtor and Quick Bridge executed a second Purchase and Sale of Future Receivables (the "Second Quick Bridge Agreement" and, together with the First Quick Bridge Agreement, the "Quick Bridge Agreements"). The Second Quick Bridge Agreement requires the Debtor to pay $400,859.84 to Quick Bridge over the term of the agreement.

23.    While the Quick Bridge Agreements are stylized as sale agreements of a percentage of the Debtor's accounts receivable, the Quick Bridge Agreements also contain terms similar to a secured loan transaction and Quick Bridge may assert a security interest in the Debtor's accounts receivable.

24.    With respect to the Quick Bridge Agreements, Quick Bridge filed an original financing statement with the Office of the North Dakota Secretary of State, File No. 24-001337905-6, on March 13, 2024, identifying the following collateral:

> All personal property of the Debtor, tangible or intangible, whether now owned or hereafter acquired, including but not limited to: (a) accounts and accounts receivable, (b) inventory, (c) equipment, (d) investment property, (e) instruments, including promissory notes, (f) chattel paper, including electronic chattel paper, (g) documents, (h) letter of credit rights, (i) deposit accounts, (j) general intangibles, and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the

Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

25.     As of the Petition Date, the outstanding amount of the Debtor's obligations to Quick Bridge under the Quick Bridge Agreements totaled approximately $388,332.97 (the "Quick Bridge Indebtedness").

**D.     Internal Revenue Service.**

26.     The Internal Revenue Service ("IRS") asserts federal tax lien against the Debtor and its assets resulting from alleged unpaid ax liabilities incurred prior to the Petition Date.

27.     The IRS filed a Federal Tax Filing with the Office of the North Dakota Secretary of State, Filing No. 24-001365777-2, on May 10, 2024, assessing $1,112,687.87 against the Debtor (the "First Tax Lien").

28.     The IRS filed a Federal Tax Filing with the Office of the North Dakota Secretary of State, Filing No. 24-00388986-9, on July 16, 204, assessing $3,547.08 against the Debtor (the "Second Tax Lien").

29.     The IRS filed a Federal Tax Filing with the Office of the North Dakota Secretary of State, Filing No. 24-001426285-2 on October 29, 2024, assessing $427,671.71 against the Debtor (the "Third Tax Lien" and, together with the First Tax Lien and Second Tax Lien, the "Tax Liens").

30.     Pursuant to the Tax Liens, the IRS asserts a lien on "all property and rights to property belonging to" the Debtor.

31.     In total and as of the Petition Date, the IRS has assessed approximately $1,543,906.66 against the Debtor.

## II.    EQUIPMENT LENDERS.

32.    On July 31, 2021, CIT Bank, N.A. ("CIT") and the Debtor executed a certain Installment Payment Agreement whereby CIT loaned $256,268 to the Debtor for purposes of purchasing a 2015 Kenworth T800 16 CY Tri Drive Hydro Vac Truck.  The Debtor granted a security interest to CIT in the vehicle pursuant to the terms of the Installment Payment Agreement.

33.    On December 17, 2021, CIT and the Debtor executed another certain Installment Payment Agreement whereby CIT loaned $20,994.75 to the Debtor for purposes of purchasing a 2012 Dragon All Aluminum Crude Hauler.  The Debtor granted a security interest to CIT in the vehicle under the Installment Payment Agreement.

34.    On October 1, 2023, Balboa Capital and the Debtor executed a certain equipment financing agreement, under which the Debtor granted Balboa Capital a security interest in certain equipment the Debtor purchased with funds from Balboa Capital.

35.    On May 15, 2023, the Debtor and Bell Bank Equipment Finance ("Bell Bank") executed that certain Combined Note and Security Agreement whereby the Debtor borrowed $195,814.26 from Bell Bank for purposes of purchasing a 2024 Volvo VHD84FT Daycab Semi Tractor.  The Debtor granted a security interest to Bell Bank in the vehicle and Bell Bank filed a an original financing statement with the Office of the North Dakota Secretary of State, File No. 23-00121677-6, on May 16, 2023, which identified the vehicle.

36.    Bell Bank additionally filed an original financing statement with the Office of the North Dakota Secretary of State, File No. 22-000995967-7, on January 7, 2022, identifying a security interest in a 2014 Volvo VHD84FT300 Daycab Semi Tractor.

37.    On May 16, 2023, BMO Harris Bank N.A. ("BMO") and the Debtor executed that certain Loan and Security Agreement whereby the Debtor borrowed $195,264.26 from BMO for

the purpose of purchasing a 2024 Volvo VHD84FT Daycab Semi Tractor.  The Debtor granted a security interest to BMO in the vehicle.

38.     On September 23, 2022, Volvo Financial Servies ("Volvo") and the Debtor executed a certain Master Loan and Security Agreement whereby Volvo loaned $764,084.52 to the Debtor for the purpose of purchasing four vehicles.  The Debtor granted Volvo a security interest in the vehicles.

39.     On August 10, 2023, DeLage Landen Financial Services, Inc. ("DeLage") and the Debtor executed a certain Loan and Security Agreement whereby DeLage loaned $314,045 to the Debtor for the purpose of purchasing a 2019 Western Star Truvac.  The Debtor granted DeLage a security interest in the vehicle and DeLage filed an original financing statement with the Office of the North Dakota Secretary of State, File No. 23-001248683-1, on August 10, 2023, identifying the vehicle.

40.     Marlin Business Bank ("Marlin") filed an original financing statement with the Office of the North Dakota Secretary of State, File No. 21-000932398-1, on August 4, 2021, identifying the following collateral:

> 2013 Kenworth T800 Tri Drive Winch Tractor 1XKDP4EX0DR360952, AS LISTED ON INV# 202134942808, AND ALL REPLACEMENTS, SUBSTITUTIONS, ACCESSORIES, ACCESSIONS, ADDONS, AND ALL PROCEEDS AND ACCOUNTS OF THE DEBTOR ARISING OUT OF OR RELATED TO THE FOREGOING. THIS FINANCING STATEMENT RELATES TO AN EQUIPMENT FINANCE AGREEMENT BETWEEN THE DEBTOR (AS CUSTOMER) AND THE SECURED PARTY (AS FINANCE COMPANY). THIS FINANCING STATEMENT IS FILED TO GIVE NOTICE OF SECURED PARTY'S FIRST PRIORITY, PURCHASE MONEY SECURITY INTEREST IN THE COLLATERAL.

41.     While CIT, Balboa Capital, Bell Bank, BMO, Volvo, DeLage, and Marlin (collectively, the "Equipment Lenders") all assert security interests in various assets of the Debtor, the Debtor does not believe any of the Equipment Lenders hold a security interest, or otherwise

assert a security interest, in the Debtor's cash collateral, including in any cash, accounts, or accounts receivable.

42.     Nevertheless, out of an abundance of caution, the Debtor served the Equipment Lenders with a copy of this Motion.

## **RELIEF REQUESTED**

### I.    CASH NEEDS.

43.     The Debtor seeks authorization to use cash collateral to continue operations and pay expenses in accordance with the cash flow projections and budget attached as **Exhibit A** (the "Budget").[3]

44.     The Debtor requires the use of approximately $2,950,600 between March 17, 2025 and the end of the week beginning June 30, 2025, in accordance with the Budget.

45.     The Debtor will use the cash collateral to pay essential expenses of its business operations, which include postpetition wages and benefits to employees, payroll taxes, insurance, and postpetition purchases to utility providers, trade vendors, and other parties that supply essential goods and services to the Debtor.

46.     If the Debtor cannot use cash collateral, it will not be able to fund its operations, which will result in loss of value for the estate and its creditors.

47.     The Debtor will generate cash from continuing operations.  As set forth in the Budget, the Debtor projects that such cash will be sufficient to fund its Chapter 11 administrative expenses, including postpetition operating expenses, while maintaining a level of collateral to provide adequate protection to the Prepetition Lenders.

---

[3] The Debtor's starting cash balance is lower than expected based on the last cash collateral budget, as the Debtor's revenues during the last cash collateral period were lower than expected.

## II.      ADEQUATE PROTECTION.

48.      To adequately protect the Prepetition Lenders' interests, the Debtor proposes to grant the Prepetition Lenders postpetition replacement security interests of the same priority, dignity, and effect as their prepetition interest in the Debtor's cash collateral, to the extent of cash collateral used.  As described in the collateral balance projections included with the Budget, the Debtor projects that the value of the cash, accounts receivable, and other collateral of the Prepetition Lenders will remain above the combined balance as of the Petition Date.[4]

49.      For the avoidance of doubt, Chapter 5 causes of action arising under 11 U.S.C. § 501 et seq. are excluded from the proposed, replacement security interests.

50.      As additional adequate protection, the Debtor will continue to provide the reporting and inspecting rights the Prepetition Lenders are entitled to under their respective prepetition agreements with the Debtor.

51.      Prior to the hearing on the Motion, and in settlement of any and all of the matters raised in this Motion, the Debtor may enter into a stipulation or agreed order with the Prepetition Lenders concerning use of cash collateral, adequate protection, and other related matters.  In the event the Debtor enters into any such stipulation, the Debtor will seek approval of the stipulation without further notice or hearing pursuant to Fed. R. Bankr. P. 4001(d)(4), and **THE DEBTOR HEREBY GIVES NOTICE OF INTENT TO SEEK APPROVAL OF ANY SUCH STIPULATION OR AGREED ORDER.**

---

[4] While there is technically a decrease in the total value of the collateral from the Petition Date through the end of the cash collateral period, that is due to a timing issue related to when the Debtor's payroll is funded. As demonstrated by the cash balance for the week beginning on June 23, 2025, absent the funding of payroll, there would be an overall gain in value of approximately $70,000.

Case 24-30525    Doc 83    Filed 02/20/25    Entered 02/20/25 11:22:41    Desc Main
Document      Page 12 of 23

## BASIS FOR RELIEF REQUESTED

**I.    THE COURT SHOULD AUTHORIZE THE USE OF CASH COLLATERAL.**

52.    The Bankruptcy Code provides that a debtor in possession may use cash collateral only with the secured creditor's consent or if the court, after notice and a hearing, authorizes such use. *See* 11 U.S.C. § 363(c)(2).  Section 363(e) of the Bankruptcy Code provides that the Court must provide the secured creditor with adequate protection of its interest upon request of the creditor.  The Eighth Circuit Court of Appeals has reasoned that:

> In any given case, the Bankruptcy Court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the Debtor's request for use of cash collateral, and (3) determine whether the Debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985).

53.    Pursuant to *Martin*, the first step is to establish the value of the secured creditor's interest.  Focusing on the cash collateral that is subject to the liens of the lender, the creditor's interest is determined by what the creditor could recover if the collateral were disposed of in the most commercially reasonable manner practicable.  *In re Boring*, 91 B.R. 791, 795 (Bankr. S.D. Ohio 1988); *United States v. Smithfield Estates, Inc.*, 48 B.R. 910, 912 (Bankr. D.R.I. 1985).

54.    As of the Petition Date, the Debtor's obligations to the Prepetition Lenders and the Equipment Lenders collectively totaled approximately $7,203,449.97 plus additional costs, fees, and interest. As of that same date, the value of the Prepetition Lenders' collateral was approximately $7,250,552.

55.    The second requirement of *Martin* requires the Court to identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral.  In the instant case, such risk would be that a debtor might fail to generate sufficient replacement cash collateral

to compensate for use of existing cash collateral.  Here, that risk is minimal.  By the end of the cash collateral period, the value of the collateral is approximately $7,242,517, still well in excess of the Debtor's combined obligations. The Debtor proposes to use cash collateral to maintain its existing operations, to meet payroll and payroll taxes, and to meet other operating expenses, all of which maintain the going-concern value of the Debtor and inure to the benefit of the Prepetition Lenders.  In the event that the Debtor is not authorized to use cash collateral, the Debtor's business will be severely harmed.  Employees, which are critical to Debtor's operation, will leave. Such a result would greatly impair the value of the Debtor's assets in which the Prepetition Lenders claim security interests.  Such a result would ensure that unsecured creditors receive, at best, a minimal distribution on account of their claims and would be disruptive to the Debtor's customers, employees, and other parties in interest

56.     The third requirement of *Martin* requires the Court to examine the debtor's adequate protection proposal to determine that the proposal protects the value of the lender's interest, if any, in the cash collateral relative to the risk to such value.  *See Martin*, 761 F.2d at 477.  Here, to adequately protect the Prepetition Lenders' interests, the Debtor proposes to grant the Prepetition Lenders postpetition replacement security interests of the same priority, dignity, and effect as their prepetition interest in the Debtor's cash collateral, to the extent of cash collateral used.

57.     As described on the collateral balance projections attached to the Budget, there is a substantial equity cushion. Accordingly, the Prepetition Lenders are adequately protected by the increase of collateral during the period.

58.     As additional adequate protection, the Debtor will continue to provide the reporting and inspection rights the Prepetition Lenders are entitled to under their applicable agreements with the Debtor and copies of all reporting provided to the United States Trustee.

**III.    WAIVER OF THE STAY UNDER FED. R. BANKR. P. 6004(h) IS WARRANTED.**

59.     Pursuant to Fed. R. Bankr. P. 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

60.     As described above, the immediate use of cash collateral up to the amounts set forth in the Budget and subject to the permitted variances is essential to support continuing business operations and prevent irreparable damage to the Debtor's estate. Accordingly, ample cause exists to justify the waiver of the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h), to the extent such stay applies.

61.     The Debtor respectfully requests a waiver of any stay of the effectiveness of the order approving this Motion under Fed. R. Bankr. P. 6004(h).

<u>**CONCLUSION**</u>

62.     For the foregoing reasons, the Debtor respectfully requests that the Court grant the relief requested in the Motion.

63.     This Motion is accompanied by a proposed order and proof of service.

64.     Pursuant to Fed. R. Bankr. P. 9006(d), this Motion is supported by the verification of facts in the Affidavit of Jeffery L. Jacobson attached to this Motion.

65.     Pursuant to Local Rule 9014-1(B), the Debtor hereby give notices that it may, if necessary, call Jeffery L. Jacobson, the owner of the Debtor, whose business address is 360 102X Avenue SW, Killdeer, North Dakota 58640, to testify regarding the facts set forth in the Motion.

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:

A.     Authorizing use of cash collateral from March 17, 2025 through the week beginning June 30, 2025, in the total approximate amount of $2,950,600.

B.     Authorizing the granting of replacement security interests to the Prepetition Lenders; and

C.     Granting such other relief as the Court deems just and equitable.

Dated: February 20, 2025

*/e/ Steven R. Kinsella*
Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR TWIN FALLS OIL SERVICE, LLC**

## **EXHIBIT A**

**Twin Falls Oil Service, LLC**
**Case No. 24-30525**
**Cash Flow Projections**
Dated: 2/19/2025

| Week Beginning | 17-Mar-25 | 24-Mar-25 | 31-Mar-25 | 7-Apr-25 | 14-Apr-25 | 21-Apr-25 | 28-Apr-25 | 5-May-25 | 12-May-25 | 19-May-25 | 26-May-25 | 2-Jun-25 | 9-Jun-25 | 16-Jun-25 | 23-Jun-25 | 30-Jun-25 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Starting Cash** | 93,117.00 | 164,617.00 | 152,117.00 | 149,217.00 | 151,717.00 | 168,217.00 | 145,717.00 | 137,817.00 | 125,317.00 | 151,817.00 | 134,317.00 | 111,417.00 | 108,917.00 | 160,417.00 | 157,917.00 | 204,417.00 | |
| **Cash In** | | | | | | | | | | | | | | | | | |
| Accounts Receivable | 165,000.00 | 175,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 2,960,000.00 |
| Equipment Lease | 5,000.00 | - | - | 5,000.00 | - | - | - | - | 5,000.00 | - | - | - | 5,000.00 | - | - | - | 20,000.00 |
| **Total Cash In** | 170,000.00 | 175,000.00 | 180,000.00 | 185,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 185,000.00 | 180,000.00 | 180,000.00 | 200,000.00 | 205,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 2,980,000.00 |
| **Cash Out** | | | | | | | | | | | | | | | | | |
| Payroll-Current includes Net Pay and Payroll Taxes | - | 115,000.00 | 35,000.00 | 115,000.00 | 35,000.00 | 120,000.00 | 40,000.00 | 120,000.00 | 40,000.00 | 125,000.00 | 45,000.00 | 130,000.00 | 50,000.00 | 130,000.00 | 50,000.00 | 140,000.00 | 1,290,000.00 |
| Commercial Insurance | 25,000.00 | - | 18,000.00 | - | 30,000.00 | - | 18,000.00 | - | 30,000.00 | - | 18,000.00 | - | 30,000.00 | - | 18,000.00 | - | 187,000.00 |
| Utilities | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 5,000.00 | - | 40,000.00 |
| Legal Counsel | - | - | 20,000.00 | - | - | - | 15,000.00 | - | - | - | 10,000.00 | - | - | - | 10,000.00 | - | 55,000.00 |
| Financial Advisor | - | - | 5,000.00 | - | - | - | - | 5,000.00 | - | - | 5,000.00 | - | - | - | 5,000.00 | - | 20,000.00 |
| US Trustee Quarterly Fees | - | - | - | - | 15,000.00 | - | - | - | - | - | - | - | - | - | - | - | 15,000.00 |
| Kildeer Shop Rent | - | - | 7,500.00 | - | - | - | 7,500.00 | - | - | - | 7,500.00 | - | - | - | - | 7,500.00 | 30,000.00 |
| Watford Shop Rent | - | - | 4,500.00 | - | - | - | 4,500.00 | - | - | - | 4,500.00 | - | - | - | - | 4,500.00 | 18,000.00 |
| Kildeer Housing Rent/Utilities | - | - | 6,000.00 | - | - | - | 6,000.00 | - | - | - | 6,000.00 | - | - | - | - | 6,000.00 | 24,000.00 |
| Watford Housing Rent/Utilities | - | - | 2,400.00 | - | - | - | 2,400.00 | - | - | - | 2,400.00 | - | - | - | - | 2,400.00 | 9,600.00 |
| Fuel - Diesel | 25,000.00 | 25,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 35,000.00 | 540,000.00 |
| Parts for Maintenance and Repairs | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 25,000.00 | 370,000.00 |
| Software/Technology/IT | - | 4,000.00 | - | 4,000.00 | - | 4,000.00 | - | - | 4,000.00 | - | - | 4,000.00 | - | 4,000.00 | - | 4,000.00 | 32,000.00 |
| Workers Comp - ND WSI | 15,000.00 | - | - | - | 15,000.00 | - | - | - | 15,000.00 | - | - | - | 15,000.00 | - | - | - | 60,000.00 |
| Subcontractors/Brokerage | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 120,000.00 |
| Equipment Leases | - | - | 16,000.00 | - | - | - | 16,000.00 | - | - | - | 16,000.00 | - | - | - | - | 16,000.00 | 64,000.00 |
| Reimburseable Expense | 15,000.00 | - | - | - | 15,000.00 | - | - | - | - | 15,000.00 | - | - | - | - | 15,000.00 | - | 60,000.00 |
| Miscellaneous | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 16,000.00 |
| **Total Cash Out** | 98,500.00 | 187,500.00 | 182,900.00 | 182,500.00 | 163,500.00 | 202,500.00 | 187,900.00 | 192,500.00 | 158,500.00 | 197,500.00 | 202,900.00 | 202,500.00 | 153,500.00 | 202,500.00 | 153,500.00 | 281,900.00 | 2,950,600.00 |
| **Net Cash In (Out)** | 71,500.00 | (12,500.00) | (2,900.00) | 2,500.00 | 16,500.00 | (22,500.00) | (7,900.00) | (12,500.00) | 26,500.00 | (17,500.00) | (22,900.00) | (2,500.00) | 51,500.00 | (2,500.00) | 46,500.00 | (81,900.00) | 29,400.00 |
| **Cash at the end of the week** | 164,617.00 | 152,117.00 | 149,217.00 | 151,717.00 | 168,217.00 | 145,717.00 | 137,817.00 | 125,317.00 | 151,817.00 | 134,317.00 | 111,417.00 | 108,917.00 | 160,417.00 | 157,917.00 | 204,417.00 | 122,517.00 | |

**Twin Falls Oil Service, LLC**
**Case No. 24-30525**
**Collateral Value Projections**
**Dated: 2/19/2025**

| Description | Filing Date | End of Final Period |
|---|---|---|
| Cash | $ 130,000.00 | $ 122,517.00 |
| Equipment | $ 5,500,000.00 | $ 5,500,000.00 |
| Accounts Receivable | $ 1,270,552.00 | $ 1,270,000.00 |
| Other Assets | $ 350,000.00 | $ 350,000.00 |
| **TOTAL** | **$ 7,250,552.00** | **$ 7,242,517.00** |

## <u>AFFIDAVIT</u>

I, Jeffery L. Jacobson, am the owner of Twin Falls Oil Service, LLC, and I declare under penalty of perjury that the facts set forth in the Motion for Order Authorizing the Use of Cash Collateral are true and correct, according to the best of my knowledge, information, and belief.

Dated: February 20, 2025                    Signed: _____

                                                        Jeffery L. Jacobson

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA**

In re:

Twin Falls Oil Service, LLC,                          Case No.: 24-30525
                                                      Chapter 11 Case
                    Debtor.

**ORDER AUTHORIZING USE OF CASH COLLATERAL**

The Debtor, Twin Falls Oil Service, LLC (the "Debtor") filed a Motion for Order
Authorizing the Use of Cash Collateral (the "Motion"). The Debtor served notice of the Motion.
The Court received no objections to the Motion. Upon review of the Motion, exhibits, and
Affidavit of Jeffery L. Jacobson, the Court finds cause for granting the relief Debtor seeks.

**IT IS ORDERED:**

1.      The Motion (Doc. __) is granted subject to the terms and conditions in this Order.
The Debtor shall not use cash except as expressly authorized and permitted in this Order or by
subsequent order of the Court.

2.      The Debtor is authorized to use up to $2,950,600 of cash through the end of the
week beginning June 30, 2025, including cash collateral, that may be subject to the liens of First
International Bank & Trust, Quick Bridge Funding, LLC, Samson MCA LLC, and the Internal
Revenue Service (collectively, the "Prepetition Lenders") consistent with the projections attached
as **Exhibit A** to the Motion.

3.      For purposes of adequate protection, and to the extent of the use of prepetition cash
collateral in which the Prepetition Lenders have security interests, the Debtor is authorized to grant
to the Prepetition Lenders replacement liens, pursuant to 11 U.S.C. § 552, in the Debtor's

postpetition assets of the same priority, dignity, and effect as the prepetition liens, if any, on the Debtor's prepetition property.

4.      For the avoidance of doubt, Chapter 5 causes of action arising under 11 U.S.C. § 501 et seq. are excluded from the replacement liens authorized by this Order.

5.      In addition, the Debtor shall continue to provide reporting and inspection rights to the Prepetition Lenders and copies of all reporting provided to the United States Trustee as appropriate and as requested by the Prepetition Lenders.

6.      The stay in Fed. R. Bankr. P. 6004(h) is waived and this Order is effective immediately.


Dated:

                              SHON HASTINGS, JUDGE
                              UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NORTH DAKOTA

In re:

Twin Falls Oil Service, LLC,                          Case No.: 24-30525
                                                       Chapter 11 Case
            Debtor.

## NOTICE OF MOTION FOR ORDER AUTHORIZING THE USE OF CASH COLLATERAL

TO:    The parties-in-interest as specified in the Federal Rules of Bankruptcy Procedure and the Notice and Service Requirements adopted pursuant to Local Rule 2002-1.

      1.    **NOTICE IS HEREBY GIVEN** that the Debtor, Twin Falls Oil Service, LLC, filed a Motion for Order Authorizing the Use of Cash Collateral (the "Motion"), a copy of which is enclosed and served upon you.

      2.    **NOTICE IS FURTHER GIVEN** that any objections to the Motion must be filed with the Clerk of the United States Bankruptcy Court whose address is Quentin N. Burdick United States Courthouse, 655 First Avenue North, Suite 210, Fargo, North Dakota 58102 and served upon the attorney whose name and address is listed below, by **Thursday, March 13, 2025, which is twenty-one (21) days from the date of the mailing of this Notice**. Any objections not filed and served may deemed waived.

Dated:  February 20, 2025

/e/ *Steven R. Kinsella*

Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN  55402-4400
(612) 492-7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS   FOR   TWIN   FALLS   OIL
SERVICE, LLC**