# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NORTH DAKOTA

In re:

Twin Falls Oil Service, LLC,

Debtor.[1]

Case No.: 24-30525
Chapter 11 Case

## THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION
## DATED JULY 15, 2025

---

[1] In accordance with Fed. R. Bankr. P. 2002(n) and 1005 and 11 U.S.C. § 342(c), as applicable, the Debtor's address is 360 102X Avenue SW, Killdeer, North Dakota 58640 and its Employer Identification Number (EIN) is 47-1883979.

# TABLE OF CONTENTS

ARTICLE I    DEFINED TERMS ............................................................................................. 1
    1.1.    Defined Terms. ................................................................................................ 1
    1.2.    Interpretation. ................................................................................................. 7
    1.3.    Time Periods. .................................................................................................. 8
    1.4.    Exhibits. .......................................................................................................... 8

ARTICLE II    CLASSIFICATION OF CLAIMS AND INTERESTS .............................. 8

ARTICLE III    TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS ... 9
    3.1    Allowed Administrative Expense Claims ................................................. 9
    3.2    Statutory Fees and Court Costs. .............................................................. 10
    3.3    Unsecured Priority Claims. ...................................................................... 10

ARTICLE IV    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS............. 10
    4.1    Class 1-A: Secured Claim – First International. ..................................... 10
    4.2    Class 1-B: Secured Claim – Quick Bridge. ............................................ 12
    4.3    Class 1-C: Secured Claim – Samson. ..................................................... 14
    4.4    Class 1-D: Secured Claim - IRS. ............................................................. 15
    4.5    Class 1-E: Secured Claim - CIT. .............................................................. 16
    4.6    Class 1-F: Secured Claim - Marlin. ......................................................... 17
    4.7    Class 1-G: Secured Claim – Volvo. .......................................................... 19
    4.8    Class 1-H: Secured Claim – Bell Bank. .................................................. 20
    4.9    Class 1-I: Secured Claim – BMO. ............................................................ 21
    4.10    Class 1-J: Secured Claim – De Lage. ...................................................... 22
    4.11    Class 1-K: Secured Claim – Balboa. ....................................................... 23
    4.12    Class 1-L: Secured Claim – U.S. Bank. .................................................. 24
    4.13    Class 2-A: Unsecured Claims. ................................................................. 25
    4.14    Class 2-B: Insider Claims. ....................................................................... 26
    4.15    Class 3: Equity Holders. ........................................................................... 27
    4.16    Special Provisions Relating to Rights of Setoff. ................................... 27

ARTICLE V    MEANS OF EXECUTION OF PLAN ........................................................ 27
    5.1    Vesting of Property in the Reorganized Debtors. ................................. 27
    5.2    Continued Corporate Existence and Ongoing Operations. ................. 28
    5.3    Corporate Action. ...................................................................................... 28

ARTICLE VI    DISTRIBUTIONS AND CLAIMS ADMINISTRATION ...................... 28
    6.1    Distributions. .............................................................................................. 28
    6.2    Method of Payment. .................................................................................. 28
    6.3    Claims Administration. ............................................................................. 29

ARTICLE VII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES................ 31
    7.1.    Assumption or Rejection of Executory Contracts and Unexpired Leases. .......... 31
    7.2.    Cure of Defaults. ....................................................................................... 31
    7.3.    Bar Dates for Rejection Damage Claims. ............................................... 31

ARTICLE VIII        CONFIRMATION OF THE PLAN................................................. 32
    8.1    Conditions Precedent to Effective Date......................................... 32
    8.2    Notice of Effective Date. ............................................................ 32
    8.3    Cramdown. .................................................................................. 32

ARTICLE IX        EFFECTS OF CONFIRMATION .............................................. 32
    9.1.    Title to and Vesting of Assets....................................................... 32
    9.2.    Management of the Reorganized Debtor. ...................................... 33
    9.3.    Discharge. .................................................................................... 33
    9.4.    Injunction Related to Discharge................................................... 33
    9.5.    Cancellation of Instruments. ........................................................ 34
    9.6.    Dissolution of the Committee. ...................................................... 34
    9.7.    Reservation of Rights Regarding a Sale. ...................................... 34

ARTICLE X        RETENTION OF JURISDICTION ........................................... 34

ARTICLE XI        MISCELLANEOUS PROVISIONS......................................... 36
    11.1.    Modification of the Plan. .............................................................. 36
    11.2.    Revocation of the Plan. ................................................................. 36
    11.3.    Severability of Plan Provisions. ................................................... 36
    11.4.    Default.......................................................................................... 36
    11.5.    Successors and Assigns. ............................................................... 37
    11.6.    Retiree Benefits............................................................................ 37
    11.7.    Debtor's Organizational Documents............................................. 37
    11.8.    Governmental Approval................................................................ 37

# INTRODUCTION

Twin Falls Oil Service, LLC (the "Debtor") proposes the following Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of the Bankruptcy Code.[2]

All creditors are encouraged to consult the Disclosure Statement before voting to accept or reject this Plan. Among other information, the Disclosure Statement contains information regarding: (a) the Debtor; (b) events prior to and during this Chapter 11 Case; and (c) a summary and analysis of the Plan. No solicitation materials, other than the Disclosure Statement, have been authorized by the Court for use in soliciting acceptances or rejections of the Plan.

Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation. This Plan proposes a restructuring of the Debtor's obligations to allow the Debtor to continue operating while repaying holders of Allowed claims under the terms set forth below.

# ARTICLE I
# DEFINED TERMS

## 1.1.    Defined Terms.

For the purposes of the Plan, except as expressly provided, all capitalized terms have the meanings ascribed to them below:

(1)    "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code asserted against the Debtor, including: (a) the actual, necessary costs and expenses of preserving the estate of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b), and/or 1103 of the Bankruptcy Code and actually Allowed pursuant to a Final Order of the Court; and (c) all fees and charges assessed against the estate under 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the Office of the United States Trustee.

(2)    "Allowed" means with respect to any claim: (a) a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent, or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a Contested Claim or has been allowed by a Final Order; (c) a claim that is determined by the Debtor to be allowed; (d) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a claim relating to a rejected executory contract or unexpired lease that is not a Contested Claim or has been allowed by a Final Order, only if a proof of claim has been timely filed; or (f) a claim as to which a proof of claim has been timely filed and as to which the Debtor or any

---

[2] All capitalized terms shall have the meaning ascribed to them in Article I of this Plan.

party-in-interest has not filed an objection; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

(3)  "<u>Assumed Agreement</u>" means a contract, lease, or other agreement listed on **<u>Exhibit A</u>**.

(4)  "<u>Avoidance Claim</u>" means any claim, cause of action, or rights to property of the Debtor or the bankruptcy estate under sections 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code.

(5)  "<u>Balboa</u>" means Balboa Capital Corporation, and each of its successors and assigns.

(6)  "<u>Balboa Agreement</u>" means that certain Equipment Financing Agreement dated September 6, 2023, between the Debtor and Balboa, and any other agreements between the Debtor and Balboa.

(7)  "<u>Balboa Collateral</u>" means the 2007 Peterbilt Conventional 378 T/A Sleeper Truck Tractor (VIN No. *9732) and the 2007 Kenworth W900 Crane Truck (VIN No. *9298), and any other collateral attributed to Balboa on **<u>Exhibit B</u>**.

(8)  "<u>Balboa Guarantor</u>" means Jeffery L. Jacobson.

(9)  "<u>Bankruptcy Code</u>" means Title 11 of the United States Code.

(10)  "<u>Bankruptcy Rule</u>" means a Federal Rule of Bankruptcy Procedure.

(11)  "<u>Bell Bank</u>" means Bell Bank Equipment Finance, and each of its successors and assigns.

(12)  "<u>Bell Bank Agreement</u>" means that certain Combined Note and Security Agreement dated May 15, 2023, between the Debtor and Bell Bank, and any other agreements between the Debtor and Bell Bank.

(13)  "<u>Bell Bank Collateral</u>" means the 2024 Volvo VHD84FT Daycab Semi Tractor (VIN No. *6396), as identified on the May 16, 2023 financing statement filed with the Office of the North Dakota Secretary of State (File No. 23-00121677-6), and any other collateral attributed to Bell Bank on **<u>Exhibit B</u>**.

(14)  "<u>BMO</u>" means BMO Bank N.A., and each of its successors and assigns.

(15)  "<u>BMO Agreement</u>" means that certain Loan and Security Agreement dated May 16, 2023, between the Debtor and BMO, and any other agreements between the Debtor and BMO.

(16)  "<u>BMO Collateral</u>" means the 2024 Volvo VHD84FT Daycab Semi Tractor (VIN No. *6398), and any other collateral attributed to BMO on **<u>Exhibit B</u>**.

(17)  "<u>BMO Guarantor</u>" means Jeffery L. Jacobson.

2

(18)  "Causes of Action" means any and all actions, proceedings, causes of action (including any causes of action of a debtor or debtor in possession or the bankruptcy estate under Chapter 5 of the Bankruptcy Code, such as an Avoidance Claim), liabilities, obligations, suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, rights to object to claims, variances, trespasses, damages, judgments, executions, claims, and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether asserted or assertable directly or derivatively, in law, equity, or otherwise, and all rights thereunder or attendant thereto that belong to the Debtor or its bankruptcy estate.

(19)  "Chapter 11 Case" means the Debtor's pending case under the Bankruptcy Code, identified in the caption at the top of this Plan.

(20)  "CIT" means CIT Bank, N.A., and each of its successors, assigns, and alternative names, including, without limitation, First-Citizens Bank & Trust Company.

(21)  "CIT Agreements" means those certain Installment Payment Agreements dated July 31, 2021, December 17, 2021, and September 15, 2022, respectively, between the Debtor and CIT, and any other agreements between the Debtor and CIT.

(22)  "CIT Collateral" means the three Freightliner Cascadia Sleeper Tractors (VIN Nos. *8995, *8997, and *8718), the 2015 Kenworth T800 16 CY Tri Drive Hydro Vac Truck (VIN No. *2718), the two 2018 Dodge Ram 3500s (VIN Nos. *6664 and *8723), and any other collateral attributed to CIT on **Exhibit B**.

(23)  "Claim Filing Deadline" means February 19, 2025.

(24)  "Confirmation Date" means the date on which the Confirmation Order is entered.

(25)  "Confirmation Order" means the order entered by the Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

(26)  "Contested Claim" means: (a) a claim that was scheduled by the Debtor in its Schedules as a disputed, contingent, or unliquidated claim and that has not been otherwise Allowed; (b) a claim that is not an Allowed claim because the Debtor or other party in interest has objected to allowance of the claim under sections 502(b) or 503 of the Bankruptcy Code and Bankruptcy Rule 3007; (c) any secured or unsecured portions of a secured claim that is the subject of a motion for determination of the value of security under section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012; (d) any claim held by a creditor against which the Debtor has demanded the recovery of property pursuant to section 502(d) of the Bankruptcy Code, without regard to whether such claim was previously an Allowed claim; (e) a claim that is subject to final adjudication in a proceeding outside the Court against one or more of the Debtor's insurers; or (f) a claim whose validity or amount is subject to determination in an adversary proceeding that has not been resolved by a Final Order.

(27)  "Contested Claim Reserve" means the separate reserve account maintained by the Debtor to hold any payments the Debtor may be required to pay to a holder of a Contested Claim

3

under the Plan while the Debtor and the holder of a Contested Claim litigate, negotiate, or otherwise resolve the Contested Claim.

(28)    "Court" means the United States Bankruptcy Court for the District of North Dakota, or such other court of competent jurisdiction which properly exercises jurisdiction over part or all of the Chapter 11 Cases.

(29)    "Debtor" means Twin Falls Oil Service, LLC.

(30)    "De Lage" means De Lage Landen Financial Services, Inc., and each of its successors and assigns.

(31)    "De Lage Agreement" means that certain Loan and Security Agreement dated August 10, 2023, between the Debtor and De Lage, and any other agreements between the Debtor and De Lage.

(32)    "De Lage Collateral" means the 2019 Western Star Truvac (VIN No. *6655) as identified on the August 10, 2023, financing statement filed with the Office of the North Dakota Secretary of State (File No. 23-001248683-1), and any other collateral attributed to De Lage on **Exhibit B**.

(33)    "De Lage Guarantor" means Jeffery L. Jacobson.

(34)    "Disclosure Statement" means the Disclosure Statement for this Plan, as may be further revised, modified, or amended.

(35)    "Effective Date" means the first business day following the day on which the conditions of Section 8.1 have been satisfied.

(36)    "Final Order" means an order of the Court which has not been reversed, stayed, modified, or amended and the time to appeal from or to seek review or rehearing of such order has expired.

(37)    "First International" means First International Bank & Trust, and each of its successors and assigns.

(38)    "First International Collateral" means substantially all of the Debtor's assets as identified on the January 31, 2023, financing statement filed with the Office of the North Dakota Secretary of State (No. 23-001165018-9), and any other collateral attributed to First International on **Exhibit B**.

(39)    "First International Guarantors" means Jeffery L. Jacobson, TF Holdings, LLC, and Twin Falls Logistics, LLC.

(40)    "First International Litigation" means the case styled as *First Int'l Bank & Trust v. Jacobson*, No. _____ (McKenzie Cnty. N.D.).

4

(41) "<u>First International Loan Documents</u>" means that certain Promissory Note dated August 31, 2020 in the principal amount of $188,000, that certain Promissory Note dated December 18, 2020 in the principal amount of $3,375,000, that certain Mortgage dated August 31, 2020 and recorded on September 24, 2020 with the Dunn County Recorder as Document No. 3092363, that certain Commercial Security Agreement dated August 31, 2020, and any other agreements between the Debtor and First International.

(42) "<u>Insider</u>" means each past and present: (a) member of the Debtor; (b) officer of the Debtor; (c) person in control of the Debtor; (d) partnership in which the Debtor is a general partner; (e) general partner of the Debtor; or (f) relative of a member, officer, person in control of the Debtor, or general partner of the Debtor.

(43) "<u>Insider Claim</u>" means any timely-filed claim held by an Insider against the Debtor.

(44) "<u>Insider Indemnification Claim</u>" means any portion of an Insider Claim that seeks indemnification or contribution from the Debtor that is contingent and unliquidated as of the Effective Date.

(45) "<u>IRS</u>" means the Internal Revenue Service.

(46) "<u>Marlin</u>" means Marlin Business Bank, and each of its successors, assigns, and alternative names, including, without limitation, PEAC Solutions.

(47) "<u>Marlin Agreement</u>" means that certain Titled Equipment Finance Agreement dated August 6, 2021, between the Debtor and Marlin, and any other agreements between the Debtor and Marlin.

(48) "<u>Marlin Guarantor</u>" means Jeffery L. Jacobson.

(49) "<u>Marlin Collateral</u>" means the 2013 Kenworth T800 Tri Drive Winch Tractor (VIN No. 0952) and related collateral as identified on the August 4, 2021, financing statement filed with the Office of the North Dakota Secretary of State (File No. 21-000932398-1), and any other collateral attributed to Marlin on **<u>Exhibit B</u>**.

(50) "<u>Petition Date</u>" means December 11, 2024.

(51) "<u>Plan</u>" means this chapter 11 plan of reorganization as amended, revised, or modified.

(52) "<u>Plan Term</u>" means the 60-month period beginning on the Effective Date.

(53) "<u>Priority Tax Claim</u>" means a claim that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

(54) "<u>Quick Bridge</u>" means Quick Bridge Fundings, LLC, and each of its successors and assigns.

(55)   "Quick Bridge Agreements" means those certain Purchase and Sale of Future Receivables dated March 13, 2024, and August 15, 2024, respectively, between the Debtor and Quick Bridge, and any other agreements between the Debtor and Quick Bridge.

(56)   "Quick Bridge Collateral" means all personal property of the Debtor, tangible or intangible, whether now owned or hereafter acquired, including but not limited to: (a) accounts and accounts receivable; (b) inventory; (c) equipment; (d) investment property; (e) instruments; including promissory notes; (f) chattel paper, including electronic chattel paper; (g) documents; (h) letter of credit rights; (i) deposit accounts; (j) general intangibles; and (k) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code, as identified on the March 13, 2024 financing statement filed with the Office of the North Dakota Secretary of State (File No. 24-001337905-6).

(57)   "Quick Bridge Guarantor" means Jeffery L. Jacobson.

(58)   "Quick Bridge Litigation" means the case styled as *Quick Bridge Funding, LLC v. Jacobson*, No. 30-2025-01462132-CU-BC-CJC (Orange Cnty. Cal.).

(59)   "Reorganized Debtor" means the Debtor on and after the Effective Date.

(60)   "Samson" means Samson MCA LLC, and each of its successors and assigns.

(61)   "Samson Agreements" means that certain Revenue Purchase Agreement dated April 7, 2023, that certain Sale of Future Receipts Agreement dated December 6, 2023, and July 18, 2024, respectively, between the Debtor and Samson, and any other agreements between the Debtor and Samson.

(62)   "Samson Collateral" means all the Debtor's present and future accounts and the direct and indirect proceeds thereof as identified on the October 2, 2024, financing statement filed with the Office of the North Dakota Secretary of State (No. 24-001416778-2).

(63)   "Samson Guarantor" means Jeffery L. Jacobson.

(64)   "Samson Litigation" means the case styled as *Samson MCA LLC v. Twin Falls Oil Service LLC*, No. E2024016844 (Monroe Cnty. N.Y.).

(65)   "Schedules" means the Debtor's schedules of assets and liabilities and the statement of financial affairs on file with the Clerk of Court, as amended or modified in accordance with Bankruptcy Rule 1009.

(66)   "Stay Parties" means Jeffery L. Jacobson, TF Holdings, LLC, and Twin Falls Logistics, LLC.

(67)   "Tax Liens" means the Federal Tax Filings filed by the IRS with the Office of the North Dakota Secretary of State on May 10, 2024 (File No. 24-001365777-2), July 16, 2024 (File No. No. 24-00388986-9), and October 29, 2024 (File No. 24-001426285-2).

(68)   "Unsecured Claim" means any claim that is unsecured, except for an Insider Claim.

(69)    "U.S. Bank" means U.S. Bank Equipment Finance, and each of its successors and assigns.

(70)    "U.S. Bank Agreement" means that certain Equipment Finance Agreement dated August 4, 2021, between the Debtor and U.S. Bank, and any other agreements between the Debtor and U.S. Bank.

(71)    "U.S. Bank Collateral" means that certain 2015 Kenworth T800 16 CY Tri Drive Hydro Vac Truck (VIN No. 2717).

(72)    "U.S. Bank Guarantor" means Jeffery L. Jacobson.

(73)    "Volvo" means Volvo Financial Services or VFS US LLC, and each of their successors and assigns.

(74)    "Volvo Agreements" means those certain Master Loan and Security Agreements dated November 1, 2019, and September 23, 2022, that certain Credit Sales Contract (Security Agreement) dated May 28, 2021, and those certain Promissory Notes dated September 23, 2022 and August 29, 2023, all between the Debtor and Volvo, and any other agreements between the Debtor and Volvo.

(75)    "Volvo Collateral" means three 2020 Volvo VHD Tractors (VIN Nos. *8960, *8961, and *8962), four 2023 Volvo VHD Tractors (VIN Nos. *7979, *7978, *7977, and *7976), and the 2024 Volvo VHD Tractor (VIN No. *6400), and any other collateral attributed to Volvo on **Exhibit B**.

## 1.2.   Interpretation.

For purposes of the Plan:

(1)    any term that is not defined in this Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable;

(2)    the terms "including" or "include(s)" are intended to be illustrative and not exhaustive, and shall be construed as "including, but not limited to," "include(s), but is not limited to," or "includes, without limitation";

(3)    whenever the context requires, terms shall include the plural as well as the singular number, and the masculine gender shall include the feminine and the feminine gender shall include the masculine;

(4)    the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply;

(5)    unless the context should otherwise require, all references to documents to be filed shall refer to filing with the Court in accordance with the Bankruptcy Code and Bankruptcy Rules;

(6)     any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

(7)     any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented;

(8)     unless otherwise specified, all references in the Plan to "Articles," "Sections," and "Exhibits" are references to Articles, Sections, and Exhibits of or to the Plan;

(9)     the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(10)    captions and headings to Articles and Sections are inserted for ease of reference only and shall not be considered a part of the Plan or otherwise affect the interpretation of the Plan; and

(11)    the Plan supersedes all prior drafts of the Plan, and all prior negotiations, agreements, and understandings with respect to the Plan, evidence of which shall not affect the interpretation of any provision of the Plan.

### 1.3.    Time Periods.

In computing any period of time prescribed or authorized by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.  Enlargement of any period of time prescribed or authorized by the Plan shall be governed by the provisions of Bankruptcy Rule 9006(b).

### 1.4.    Exhibits.

All exhibits to the Plan are hereby incorporated by reference and made part of the Plan as if set forth fully in the Plan. The exhibits to the Plan include the following:

**Exhibit A**     Assumed Agreements and Cure Amounts

**Exhibit B**     Equipment Schedule

**Exhibit C**     Plan Payment Schedule

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the classes of claims against the Debtor and specifies which of those classes are: (a) impaired or unimpaired by the Plan; and (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.  A claim is classified in a particular class only to the extent that the claim or interest qualifies within the description of that

8

class and is classified in other classes to the extent that any remainder of the claim qualifies within the description of such other classes.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Expenses | N/A | No |
| N/A | Statutory Fees and Court Costs | N/A | No |
| N/A | Priority Claims | N/A | No |
| 1-A | Secured Claim – First International | Yes | Yes |
| 1-B | Secured Claim – Quick Bridge | Yes | Yes |
| 1-C | Secured Claim – Samson | Yes | Yes |
| 1-D | Secured Claim – IRS | Yes | Yes |
| 1-E | Secured Claim – CIT | Yes | Yes |
| 1-F | Secured Claim – Marlin | Yes | Yes |
| 1-G | Secured Claim - Volvo | Yes | Yes |
| 1-H | Secured Claim – Bell Bank | Yes | Yes |
| 1-I | Secured Claim – BMO | Yes | Yes |
| 1-J | Secured Claim – De Lage | Yes | Yes |
| 1-K | Secured Claim – Balboa | Yes | Yes |
| 1-L | Secured Claim – U.S. Bank | Yes | Yes |
| 2-A | Unsecured Claims | Yes | Yes |
| 2-B | Insider Claims | Yes | No |
| 3 | Equity Interests | No | No |

## ARTICLE III
## TREATMENT OF CERTAIN UNCLASSIFIED PRIORITY CLAIMS

Certain Allowed claims that are not classified shall be treated as follows:

**3.1    Allowed Administrative Expense Claims.**

Except as otherwise provided in this Article, holders of Allowed claims specified in section 507(a)(2) of the Bankruptcy Code, shall: (a) be paid in full in cash as soon as reasonably practical following the later of: (i) the Effective Date; (ii) the due date; or (iii) the date the claim becomes Allowed; or (b) receive such other treatment as agreed in writing by the holder thereof or ordered by the Court.

Professional fees and expenses incurred through the Effective Date and not previously Allowed shall be subject to Court approval after the Effective Date. All holders of professional fees and expenses claims shall file and serve an application for final allowance of compensation and reimbursement of expenses accruing from the Petition Date to the Effective Date, no later than 30 days after the Effective Date. The Reorganized Debtor shall pay any Allowed professional fees and expenses within 10 days of the later of: (a) the Effective Date; or (b) the Court's order allowing such claim.

### 3.2    Statutory Fees and Court Costs.

Court costs and fees payable by the Debtor or the Reorganized Debtor under 28 U.S.C. § 1930 shall be paid in full in cash on the Effective Date or as soon as practicable thereafter or as required under the Office of the United States Trustee's quarterly fee payment guidelines. The Debtor estimates these claims will be nominal, as it has remained current on such payments. After confirmation, the Reorganized Debtor shall continue to pay quarterly fees to the Office of the United States Trustee and to file quarterly reports with the Office of the United States Trustee until the Chapter 11 Case is closed, dismissed, or converted by order of the Court. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed chapter 11 cases.

### 3.3    Unsecured Priority Claims.

#### 3.3.1    Priority Tax Claims.

The Debtor estimates that Priority Tax Claims total approximately $252,094.26. Allowed Priority Tax Claims shall be paid in full through monthly payments of $4,000 pursuant to the payment schedule attached as **Exhibit C**. The monthly payments shall begin following the later of: (a) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) July 1, 2025. While the IRS asserts a priority claim in the amount of $227,409.74, it also asserts a secured claim in the amount of $1,658,964.40. The IRS's secured claim is treated in Section 4.4 below. The IRS shall be entitled to interest on its priority claim at a rate of 7%.

Notwithstanding anything to the contrary in this Plan, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with, the Allowed Priority Tax Claim. Any such claim or demand for any such penalty shall be subject to treatment in Class 2-A (Unsecured Claims), if not subordinated to Class 2-A claims pursuant to an order of the Court. The holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtor, the Reorganized Debtor, or the property of either (other than as a holder of a Class 2-A claim).

#### 3.3.2    Other Priority Claims.

All other Allowed claims not specifically treated in this Article and entitled to priority under section 507(a) of the Bankruptcy Code shall be paid in full in cash as soon as practicable following the later of: (a) the Effective Date; (b) the due date; or (c) the date on which such claims are Allowed. The Debtor does not believe there are any claims of this type.

### ARTICLE IV
### TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS.

### 4.1    Class 1-A: Secured Claim – First International.

Class 1-A consists of the secured claim of First International based on the First International Loan Documents. On the Petition Date, the amount owed to First International was the aggregate sum of $3,113,452.89. Since the Petition Date, the Debtor has not made payments on account of this claim. The Class 1-A claim is composed of the following loans: (a) a loan dated

December 18, 2020, and made pursuant to the Main Street Lending Program with a balance of $2,715,500.29 as of the Petition Date (Loan No. ****9221), (b) a loan dated August 31, 2020, with a balance of $31,408.04 (Loan No. ****7919), (c) a Business VISA credit card account with a balance of $49,269.35, and (d) a loan dated August 31, 2020, between First International and one of the First International Guarantors, TF Holdings, LLC, which the Debtor guaranteed, with a balance of $366,544.56 as of the Petition Date (Loan No. ****217901).

### 4.1.1   Treatment.

The holder of the Class 1-A claim shall receive 100% of its Allowed claim. On and after the Effective Date, interest shall accrue on the unpaid balance at the rate of 6.5% per annum. For the balance owed on Loan No. ****9221, Loan No. ****7919, and the Business VISA credit card account, the Reorganized Debtor shall pay the holder of the Class 1-A claim monthly installments pursuant to the payment schedule attached as **Exhibit C**.  The payment schedule on **Exhibit C** shall be the aggregate amount paid to the holder of the Allowed Class 1-A claim each month, but the Reorganized Debtor and the holder of the Allowed Class 1-A claim may mutually agree to bifurcate the payment into two or more payments to comply with the Main Street Lending Program, to the extent required.  The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the First International Loan Documents.  For the avoidance of doubt, the Reorganized Debtor shall not make any payments on Loan No. ****217901.  Instead, TF Holdings, LLC shall continue to make the monthly payments required under Loan No. ****7901.

The Reorganized Debtor's payments to the holder of the Class 1-A claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-A claim. The First International Litigation, to the extent still pending, shall be stayed by First International and dismissed upon full and complete performance of the Reorganized Debtor.

### 4.1.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-A claim under the Plan shall be secured by the existing liens on the First International Collateral. First International's liens shall have the same priority, dignity, and effect as the prepetition liens of First International as of the Petition Date and the postpetition liens of First International approved by the Court. After the Class 1-A claim is paid in full, First International shall release all liens on the First International Collateral.

### 4.1.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-A CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, THE STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-A CLAIM AND ANY UNCURED DEFAULT UNDER THE FIRST INTERNATIONAL LOAN DOCUMENTS, EXCEPT TO THE EXTENT ANY UNCURED DEFAULT**

11

**RELATES TO ANY PRE-PETITION ACTION, THE DEBTOR'S INSOLVENCY, A DEFAULT IN FAVOR OF THIRD PARTIES, CREDITOR OR FORFEITURE PROCEEDINGS, EVENTS AFFECTING GUARANTOR, ADVERSE CHANGE, OR INSECURITY. TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN UNTIL THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

**FOR THE AVOIDANCE OF DOUBT, IF TF HOLDINGS, LLC DEFAULTS ON ITS PAYMENTS UNDER LOAN NO. ****7901, THE HOLDER OF THE CLASS 1-A CLAIM SHALL NOT BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION ACTION AGAINST TF HOLDINGS, LLC AND ANY PAYMENT DEFAULT BY TF HOLDINGS, LLC UNDER LOAN NO. ****7901 SHALL CONSTITUTE A DEFAULT UNDER THIS PLAN.**

### 4.1.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor, First International, and the First International Guarantors may amend and restate the First International Loan Documents to reflect the terms of this Plan to the extent that the Reorganized Debtor, First International, and the First International Guarantors agree that such formal amendment is required.  Except as provided in the Plan, the terms of the First International Loan Documents shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-A claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.2   Class 1-B: Secured Claim – Quick Bridge.

Class 1-B consists of the secured claim of Quick Bridge based on the Quick Bridge Agreements. As of the Petition Date, the Debtor estimates that the amount owed to Quick Bridge was approximately $388,332.97. Quick's Bridge's security interest in the Quick Bridge Collateral is junior in priority to the interest of First International. After deducting the amount of the obligation owed by the Debtor to First International, the Debtor estimates there is not enough available equity securing the obligations owed by the Debtor to Quick Bridge. Since the Petition Date, the Debtor has not made payments on account of this claim.

### 4.2.1   Treatment.

The holder of the Class 1-B claim shall be treated as a holder an Unsecured Claim in Class 2-A, which is further described below in Article 4.13 of the Plan. Holders of Allowed Class 2-A claims shall receive 100% of their Allowed claims, with no interest. Payments on Allowed Class 2-A claims shall be made through quarterly payments and a balloon payment of the remaining balance at the end of the Plan Term pursuant to the payment schedule attached as **Exhibit C**.

The Reorganized Debtor's payments to the holder of the Class 1-B claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-B claim. The Quick Bridge Litigation, to the extent still pending, shall also be dismissed by Quick Bridge.

While the Quick Bridge Agreements are stylized as sale agreements of a percentage of the Debtor's accounts receivable, the Quick Bridge Agreements contain terms similar to a secured loan transaction. Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid the Class 1-B claim as permitted under the Bankruptcy Code or otherwise applicable law.

### 4.2.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-B claim under the Plan shall be secured by the existing liens on the Quick Bridge Collateral, to the extent valid.  Quick Bridge's liens shall have the same priority, dignity, and effect as the prepetition liens of Quick Bridge and the postpetition liens of Quick Bridge approved by the Court. After the Class 1-B claim is paid in full, Quick Bridge shall release all liens on the Quick Bridge Collateral.

### 4.2.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-B CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, THE STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-B CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN UNTIL THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.2.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor, Quick Bridge, and the Quick Bridge Guarantor may amend and restate the Quick Bridge Agreements to reflect the terms of this Plan to the extent the Reorganized Debtor,  Quick Bridge, and the Quick Bridge Guarantor believe that such formal amendment is required.  Except as provided in the Plan, the terms of the Quick Bridge Agreements shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-B claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

On or after the Effective Date, the Quick Bridge Guarantor and Quick Bridge shall execute a forbearance agreement and either a stipulated entry of monetary judgment or confession of judgment in favor of Quick Bridge.  Pursuant to the terms of this Plan and the forbearance agreement, Quick Bridge will forbear from taking any action against the Quick Bridge Guarantor unless the Debtor defaults under the terms of the Plan and such default is not cured within the applicable cure period contained in Section 11.4 of the Plan.  The Quick Bridge Litigation shall be stayed by Quick Bridge and dismissed upon full and complete performance of the Reorganized Debtor.  To the extent the Quick Bridge Litigation is dismissed prior to the full and complete performance of the Reorganized Debtor, any applicable statute of limitations associated with the Quick Bridge Litigation shall toll.

### 4.3    Class 1-C: Secured Claim – Samson.

Class 1-C consists of the secured claim of Samson based on the Samson Agreements. As of the Petition Date, the Debtor estimates that the amount owed to Samson was approximately $927,382.30. Samson's security interest in the Samson Collateral is junior in priority to the interests of First International and Quick Bridge. After deducting the amount of the obligations owed by the Debtor to First International and Quick Bridge, the Debtor estimates there is not enough available equity securing the obligations owed by the Debtor to Samson. Since the Petition Date, the Debtor has not made payments on account of this claim.

#### 4.3.1   Treatment.

The holder of the Class 1-C claim shall be treated as a holder an Unsecured Claim in Class 2-A, which is further described below in Article 4.13 of the Plan. Holders of Allowed Class 2-A claims shall receive 100% of their Allowed claims, with no interest. Payments on Allowed Class 2-A claims shall be made through biannual payments and a balloon payment of the remaining balance at the end of the Plan Term pursuant to the payment schedule attached as **Exhibit C**.

The Reorganized Debtor's payments to the holder of the Class 1-C claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-C claim. The Samson Litigation, to the extent still pending, shall also be dismissed by Samson.

While the Samson Agreements are stylized as sale agreements of a percentage of the Debtor's accounts receivable, the Samson Agreements contain terms similar to a secured loan transaction. Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid the Class 1-C claim as permitted under the Bankruptcy Code or otherwise applicable law.

#### 4.3.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-C claim under the Plan shall be secured by the existing liens on the Samson Collateral, to the extent valid. Samson's liens shall have the same priority, dignity, and effect as the prepetition liens of Samson and the postpetition liens of Samson approved by the Court. After the Class 1-C claim is paid in full, Samson shall release all liens on the Samson Collateral.

### 4.3.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-C CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, THE STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-C CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.3.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor, Samson, and the Samson Guarantor may amend and restate the Samson Agreements to reflect the terms of this Plan to the extent the Reorganized Debtor, Samson, and the Samson Guarantor believe that such formal amendment is required.  Except as provided in the Plan, the terms of the Samson Agreements shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-C claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.4      Class 1-D: Secured Claim - IRS.

Class 1-D consists of the secured claim of the IRS based on the Tax Liens. The IRS asserts a claim for $1,658,964.40 allegedly secured by all assets of the Debtor. However, the IRS only registered the Tax Liens, in the amount of $1,543,906.66, and did not register any other tax liens. The Debtor disputes that the IRS holds a secured claim in any amount over $1,543,906.66. Moreover, the IRS's security interest in all assets of the Debtor is junior in priority to the interests of First International and Quick Bridge. After deducting the amount of the obligation owed by the Debtor to First International and Quick Bridge, the Debtor estimates there is not enough available equity securing the obligations owed by the Debtor to the IRS. Since the Petition Date, the Debtor has not made payments on account of this claim.

### 4.4.1   Treatment.

The holder of the Class 1-D claim shall be treated as a holder an Unsecured Claim in Class 2-A, which is further described below in Article 4.13 of the Plan. Holders of Allowed Class 2-A claims shall receive 100% of their Allowed claims, with no interest. Payments on Allowed Class 2-A claims shall be made through biannual payments and a balloon payment of the remaining balance at the end of the Plan Term pursuant to the payment schedule attached as **Exhibit C**.

The Reorganized Debtor's payments to the holder of the Class 1-D claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-D claim.

Nothing contained in this Plan shall restrict the Debtor or the Reorganized Debtor from objecting to, contesting, or seeking to avoid the Class 1-D claim as permitted under the Bankruptcy Code or otherwise applicable law.

### 4.4.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-D claim under the Plan shall be secured by the Tax Liens, to the extent valid. The IRS's liens shall have the same priority, dignity, and effect as the prepetition liens of the IRS and the postpetition liens of the IRS approved by the Court, solely to the extent such postpetition liens of the IRS require approval by the Court.  After the Class 1-D claim is paid in full, the IRS shall release the Tax Liens.

### 4.4.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-D CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-D CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.4.4   Additional Provisions.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-D claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.5   Class 1-E: Secured Claim - CIT.

Class 1-E consists of the secured claim of CIT based on the CIT Agreements. As of the Petition Date, the Debtor estimates that the amount owed to CIT was approximately $206,343.98. Since the Petition Date, the Debtor has not made payments on account of this claim.

### 4.5.1   Treatment.

The holder of the Class 1-E claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-E claim monthly installments pursuant to the payment schedule attached as **Exhibit C**, which accounts for the same interest owed to CIT

pursuant to the CIT Agreements. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the CIT Agreements.

The Reorganized Debtor's payments to the holder of the Class 1-E claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-E claim.

### 4.5.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-E claim under the Plan shall be secured by the existing liens on the CIT Collateral, which is owned by the Debtor. CIT's liens shall have the same priority, dignity, and effect as the prepetition liens of CIT and the postpetition liens of CIT approved by the Court. After the Class 1-E claim is paid in full, CIT shall release all liens on the CIT Collateral.

### 4.5.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-E CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-E CLAIM. TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.5.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor and CIT may amend and restate the CIT Agreements to reflect the terms of this Plan to the extent the Reorganized Debtor and CIT believe that such formal amendment is required. Except as provided in the Plan, the terms of the CIT Agreements shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-E claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.6     Class 1-F: Secured Claim - Marlin.

Class 1-F consists of the secured claim of Marlin based on the Marlin Agreement. As of the Petition Date, the Debtor estimates that the amount owed to Marlin was approximately $22,630.28. Since the Petition Date, the Debtor has not made payments on account of this claim.

### 4.6.1  Treatment.

The holder of the Class 1-F claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-F claim monthly installments pursuant to the payment schedule attached as **Exhibit C**, which accounts for the same interest owed to Marlin pursuant to the Marlin Agreement. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the Marlin Agreement.

The Reorganized Debtor's payments to the holder of the Class 1-F claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-F claim.

### 4.6.2  Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-F claim under the Plan shall be secured by the existing liens on the Marlin Collateral, which is owned by the Debtor. Marlin's liens shall have the same priority, dignity, and effect as the prepetition liens of Marlin and the postpetition liens of Marlin approved by the Court. After the Class 1-F claim is paid in full, Marlin shall release all liens on the Marlin Collateral.

### 4.6.3  Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-F CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-F CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.6.4  Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor, Marlin, and the Marlin Guarantor may amend and restate the Marlin Agreement to reflect the terms of this Plan to the extent the Reorganized Debtor and Marlin believe that such formal amendment is required. Except as provided in the Plan, the terms of the Marlin Agreement shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-F claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.7    Class 1-G: Secured Claim – Volvo.

Class 1-G consists of the secured claim of Volvo based on the Volvo Agreements. As of the Petition Date, the Debtor estimates that the amount owed to Volvo was approximately $860,644.70. Since the Petition Date, the Debtor has not made payments on account of this claim.

#### 4.7.1   Treatment.

The holder of the Class 1-G claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-G claim monthly installments pursuant to the payment schedule attached as **Exhibit C**, with interest at 6%. The payment schedule on **Exhibit C** shall supersede any interest and maturity date provided for in the Volvo Agreements.

The Reorganized Debtor's payments to the holder of the Class 1-G claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-G claim.

#### 4.7.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-G claim under the Plan shall be secured by the existing liens on the Volvo Collateral, which is owned by the Debtor. Volvo's liens shall have the same priority, dignity, and effect as the prepetition liens of Volvo and the postpetition liens of Volvo approved by the Court. After the Class 1-G claim is paid in full, Volvo shall release all liens on the Volvo Collateral.

#### 4.7.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-G CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-G CLAIM. TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

#### 4.7.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor and Volvo may amend and restate the Volvo Agreements to reflect the terms of this Plan to the extent the Reorganized Debtor and Volvo believe that such formal amendment is required. Except as provided in the Plan, the terms of the Volvo Agreements shall remain in full force and effect.

19

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-G claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.8    Class 1-H: Secured Claim – Bell Bank.

Class 1-H consists of the secured claim of Bell Bank based on the Bell Bank Agreement. As of the Petition Date, the Debtor estimates that the amount owed to Bell Bank was approximately $164,756.60. Since the Petition Date, the Debtor has not made payments on account of this claim.

#### 4.8.1   Treatment.

The holder of the Class 1-H claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-H claim monthly installments pursuant to the payment schedule attached as **Exhibit C**, which accounts for the same interest owed to Bell Bank under the Bell Bank Agreement. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the Bell Bank Agreement.

The Reorganized Debtor's payments to the holder of the Class 1-H claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-H claim.

#### 4.8.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-H claim under the Plan shall be secured by the existing liens on the Bell Bank Collateral, which is owned by the Debtor. Bell Bank's liens shall have the same priority, dignity, and effect as the prepetition liens of Bell Bank and the postpetition liens of Bell Bank approved by the Court. After the Class 1-H claim is paid in full, Bell Bank shall release all liens on the Bell Bank Collateral.

#### 4.8.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-H CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-H CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

#### 4.8.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor and Bell Bank may amend and restate the Bell Bank Agreement to reflect the terms of this Plan to

the extent the Reorganized Debtor and Bell Bank believe that such formal amendment is required. Except as provided in the Plan, the terms of the Bell Bank Agreement shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-H claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.9    Class 1-I: Secured Claim – BMO.

Class 1-I consists of the secured claim of BMO based on the BMO Agreement. As of the Petition Date, the Debtor estimates that the amount owed to BMO was approximately $154,049.44 less any adequate protection payments made by the Debtor during this bankruptcy case.

#### 4.9.1   Treatment.

The holder of the Class 1-I claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-I claim monthly installments pursuant to the payment schedule attached as **Exhibit C** with interest at 9.5%. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the BMO Agreement.

The Reorganized Debtor's payments to the holder of the Class 1-I claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-I claim.

#### 4.9.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-I claim under the Plan shall be secured by the existing liens on the BMO Collateral, which is owned by the Debtor. BMO's liens shall have the same priority, dignity, and effect as the prepetition liens of BMO and the postpetition liens of BMO approved by the Court. After the Class 1-I claim is paid in full, BMO shall release all liens on the BMO Collateral.

#### 4.9.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-I CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-I CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.9.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor BMO, and the BMO Guarantor may amend and restate the BMO Agreement to reflect the terms of this Plan to the extent the Reorganized Debtor, BMO, and the BMO Guarantor believe that such formal amendment is required. Except as provided in the Plan, the terms of the BMO Agreement shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-I claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

## 4.10   Class 1-J: Secured Claim – De Lage.

Class 1-J consists of the secured claim of De Lage based on the De Lage Agreement. As of the Petition Date, the Debtor estimates that the amount owed to De Lage was approximately $332,866.64. Since the Petition Date, the Debtor has not made payments on account of this claim.

### 4.10.1   Treatment.

The holder of the Class 1-J claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-J claim monthly installments pursuant to the payment schedule attached as **Exhibit C**, which account for the same interest as other equipment lenders. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the De Lage Agreement.

The Reorganized Debtor's payments to the holder of the Class 1-J claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-J claim.

### 4.10.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-J claim under the Plan shall be secured by the existing liens on the De Lage Collateral, which is owned by the Debtor. De Lage's liens shall have the same priority, dignity, and effect as the prepetition liens of De Lage and the postpetition liens of De Lage approved by the Court. After the Class 1-J claim is paid in full, De Lage shall release all liens on the De Lage Collateral.

### 4.10.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-J CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-J CLAIM.  TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS**

**SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.10.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor and De Lage may amend and restate the De Lage Agreement to reflect the terms of this Plan to the extent the Reorganized Debtor and De Lage believe that such formal amendment is required. Except as provided in the Plan, the terms of the De Lage Agreement shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-J claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.11   Class 1-K: Secured Claim – Balboa.

Class 1-K consists of the secured claim of Balboa based on the Balboa Agreement. As of the Petition Date, the Debtor estimates that the amount owed to Balboa was approximately $141,801.09 less any adequate protection payments made by the Debtor during this bankruptcy case.

### 4.11.1   Treatment.

The holder of the Class 1-K claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-K claim monthly installments pursuant to the payment schedule attached as **Exhibit C**, which accounts for the same interest owed to Balboa under the Balboa Agreement. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the Balboa Agreement.

The Reorganized Debtor's payments to the holder of the Class 1-K claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-K claim.

### 4.11.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-K claim under the Plan shall be secured by the existing liens on the Balboa Collateral, which is owned by the Debtor. Balboa's liens shall have the same priority, dignity, and effect as the prepetition liens of Balboa and the postpetition liens of Balboa approved by the Court. After the Class 1-K claim is paid in full, Balboa shall release all liens on the Balboa Collateral.

### 4.11.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-K CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF**

23

**ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-K CLAIM. TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.11.4  Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor, Balboa, and the Balboa Guarantor may amend and restate the Balboa Agreement to reflect the terms of this Plan to the extent the Reorganized Debtor, Balboa, and the Balboa Guarantor believe that such formal amendment is required. Except as provided in the Plan, the terms of the Balboa Agreement shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-K claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

The Reorganized Debtor shall maintain insurance on the Balboa Collateral with deductibles consistent with those carried historically, with Balboa named as loss payee, insuring the Balboa Collateral for its full, insurable value against perils. The Reorganized Debtor will provide Balboa with acceptable proof of insurance coverage upon request.

On or after the Effective Date, the Reorganized Debtor and the Balboa Guarantor shall execute an Admission of Service and Stipulation for Entry of Judgment with respect to a Summons and Complaint with Exhibits A-C venued in Dunn County District Court, North Dakota pursuant to which the Reorganized Debtor and the Balboa Guarantor have stipulated to entry of a money judgment in favor of Balboa and replevin of the Balboa Collateral. The Summons, Complaint with Exhibits A-C, Admission of Service and Stipulation for Entry of Judgment are collectively the "Dunn County Lawsuit/Judgment." The Dunn County Lawsuit/Judgment shall be held in the file of Balboa's attorney and will only be filed with the Dunn County District Court, North Dakota if the Reorganized Debtor defaults under the terms of the Plan and such default is not cured within the applicable cure period contained in Section 11.4 of the Plan.

### 4.12  Class 1-L: Secured Claim – U.S. Bank.

Class 1-L consists of the secured claim of U.S. Bank based on the U.S. Bank Agreement. As of the Petition Date, the Debtor estimates that the amount owed to U.S. Bank was approximately $48,687.68. Since the Petition Date, the Debtor has not made payments on account of this claim.

### 4.12.1  Treatment.

The holder of the Class 1-L claim shall receive 100% of its Allowed claim. The Reorganized Debtor shall pay the holder of the Class 1-L claim monthly installments pursuant to

the payment schedule attached as **Exhibit C**, which accounts for the same interest owed to U.S. Bank pursuant to the U.S. Bank Agreement. The payment schedule on **Exhibit C** shall supersede any maturity date provided for in the U.S. Bank Agreement.

The Reorganized Debtor's payments to the holder of the Class 1-L claim pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 1-L claim.

### 4.12.2   Continuing Liens.

The Reorganized Debtor's obligations to pay the Class 1-L claim under the Plan shall be secured by the existing liens on the U.S. Bank Collateral, which is owned by the Debtor. U.S Bank's liens shall have the same priority, dignity, and effect as the prepetition liens of U.S. Bank and the postpetition liens of U.S. Bank approved by the Court. After the Class 1-L claim is paid in full, Balboa shall release all liens on the U.S. Bank Collateral.

### 4.12.3   Stay of Action Against Insiders and Stay Parties.

**THE HOLDER OF THE CLASS 1-L CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 1-L CLAIM. TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

### 4.12.4   Additional Provisions.

On or as soon as reasonably practicable after the Effective Date, the Reorganized Debtor, U.S. Bank, and the U.S. Bank Guarantor may amend and restate the U.S. Bank Agreement to reflect the terms of this Plan to the extent the Reorganized Debtor, U.S. Bank, and the U.S. Bank Guarantor believe that such formal amendment is required. Except as provided in the Plan, the terms of the U.S. Bank Agreement shall remain in full force and effect.

Nothing in this Plan shall restrict the Reorganized Debtor from paying the outstanding balance of the Class 1-L claim earlier than 60 months, and there shall be no prepayment penalty, defeasance cost, or yield maintenance fee assessed for such early payment.

### 4.13   Class 2-A: Unsecured Claims.

This class consists of all Unsecured Claims against the Debtor that are not entitled to priority and are not classified elsewhere in this Plan, or the unsecured portion of any other class claims. Pursuant to the Schedules and the filed proofs of claim, the Debtor estimates that the

current total amount of the Class 2-A claims is $816,702.64, but the Debtor reserves the right to object to any such claim.

Holders of Allowed Class 2-A claims shall receive 100% of their Allowed claims, with no interest. Payments on Allowed Class 2-A claims shall be made through biannual payments and a balloon payment of the remaining balance at the end of the Plan Term pursuant to the payment schedule attached as **Exhibit C**. If the Reorganized Debtor pays the holder of a Class 1-A though Class 1-L claim in full prior to the term of this Plan, any monthly payments that otherwise would have been paid to the holder of the Class 1-A through Class 1-L claim shall be added to the biannual payments made to holders of Allowed Class 2-A claims. The biannual payments shall be paid on a pro rata basis to each holder of an Allowed Class 2-A claim. For the avoidance of doubt, the balloon payment made to holders of Class 2-A claims shall be made in full before any balloon payment is made to holders of Class 2-B claims.

**AS CONSIDERATION FOR THE PROPOSED PAYMENTS UNDER THE PLAN, EACH HOLDER OF THE CLASS 2-A CLAIM SHALL BE ENJOINED FROM INITIATING OR CONTINUING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY INSIDER, STAY PARTIES, OR THEIR PROPERTY, ON ACCOUNT OF ANY DEBT OWED BY ANY INSIDER OR STAY PARTIES ON ACCOUNT OF A GUARANTY OF AN OBLIGATION OWED BY THE DEBTOR, ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 2-A CLAIM. IF ANY HOLDER OF A CLASS 2-A CLAIM PROCEEDS WITH LITIGATION AGAINST ANY INSIDER OR STAY PARTIES IT SHALL FORFEIT THE BALANCE OF ANY FUTURE PAYMENTS DUE TO SUCH HOLDER ON ACCOUNT OF ITS CLASS 2-A CLAIM, PROVIDED HOWEVER THAT THIS PROVISION SHALL NOT APPLY TO ANY PAYMENTS DUE ON ACCOUNT OF CLAIMS OR INTERESTS OTHER THAN CLASS 2-A CLAIMS. TO THE EXTENT ANY STATUTE OF LIMITATION APPLIES TO ANY CLAIM AFFECTED BY THIS SECTION, THE APPLICABLE STATUTE OF LIMITATIONS SHALL BE TOLLED AND SUCH LIMITATION PERIOD SHALL NOT BEGIN TO RUN THE OCCURRENCE OF AN UNCURED DEFAULT UNDER THE PLAN.**

The Reorganized Debtor's payments to the holders of Class 2-A claims pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2-A claims.

### 4.14    Class 2-B: Insider Claims.

This class consists of all Insider Claims. Based on the Schedules and the filed proofs of claim, the Debtor estimates that the current total amount of the Class 2-B claims is $0.00. The Debtor reserves the right to object to any Class 2-B claim.

Holders of Allowed Class 2-B claims shall not receive any payments on their Allowed claims unless and until all payments have been made to the holders of Class 1-A through Class 2-A claims pursuant to the payment schedule attached as **Exhibit C**; provided, however, that if the holder of an Insider Indemnification Claim voluntarily or involuntarily pays any amounts to the holder of a Class 1-A through Class 2-A claim, then the respective Insider Indemnification Claim

26

shall be treated as a Class 2-A claim and the holder of such claim shall receive payment in the full amount that the holder of the Insider Indemnification Claim actually paid to the holder of the Class 1-A through Class 2-A claim pursuant to the payment schedule described in Section 4.13 of this Plan.

If the holder of the Insider Indemnification Claim does not pay any amount to the holder of a Class 1-A through Class 2-A claim, then the Insider Indemnification Claim shall be subordinated to the Class 1-A through Class 2-A claims and, upon payment in full of all Class 1-A claims through Class 2-A claims, the holder of the Insider Indemnification Claim shall receive no payments under this Plan for the Insider Indemnification Claim.

**AS CONSIDERATION FOR THE PROPOSED PAYMENTS UNDER THE PLAN, IF ANY HOLDER OF A CLASS 2-B CLAIM HOLDS OR ASSERTS A CLAIM AGAINST AN INSIDER THE HOLDER OF THE CLASS 2-B CLAIM SHALL BE ENJOINED FROM INITIATING ANY COLLECTION OR ENFORCEMENT ACTION AGAINST ANY OTHER INSIDER ABSENT AN UNCURED DEFAULT BY THE REORGANIZED DEBTOR WITH RESPECT TO THE PAYMENTS PROVIDED FOR IN THIS PLAN ON THE CLASS 2-B CLAIM. IF ANY HOLDER OF A CLASS 2-B CLAIM PROCEEDS WITH LITIGATION AGAINST ANY INSIDER, IT SHALL FORFEIT THE BALANCE OF ANY FUTURE PAYMENTS DUE TO SUCH HOLDER ON ACCOUNT OF ITS CLASS 2-B CLAIM, PROVIDED HOWEVER THAT THIS PROVISION SHALL NOT APPLY TO ANY PAYMENTS DUE ON ACCOUNT OF CLAIMS OR INTERESTS OTHER THAN CLASS 2-B CLAIMS.**

The Reorganized Debtor's payments, if any, to the holders of the Class 2-B claims pursuant to this Section shall be in exchange for, and in full satisfaction, settlement, release, and discharge of, the Class 2-B claims.

### 4.15    Class 3: Equity Holders.

This class consists of all ownership interests in the Debtor. On the Effective Date, the holders of Class 3 claims shall retain their ownership interests in the Debtor.

### 4.16    Special Provisions Relating to Rights of Setoff.

Nothing in this Plan shall expand or enhance a claim holder's right of setoff, which shall be determined as of the Petition Date. Nothing in this Plan is intended, nor shall be interpreted, to approve any claim holder's effectuation of a post-Petition Date set off without the consent of the Debtor unless prior Court approval has been obtained.

### ARTICLE V
### MEANS OF EXECUTION OF PLAN

### 5.1    Vesting of Property in the Reorganized Debtors.

On the Effective Date, all of the property of the estate shall vest in the Reorganized Debtor, as further described in Section 9.1 of this Plan.

**5.2** **Continued Corporate Existence and Ongoing Operations.**

The Debtor shall, as a Reorganized Debtor, continue to exist and continue to operate its business on and after the Effective Date. The Reorganized Debtor shall retain cash on hand on the Effective Date for operating capital. Cash flow generated from the Reorganized Debtor's ongoing operations shall be used for general working capital purposes and to make distributions under the Plan. From and after the Effective Date, the Reorganized Debtor shall continue to be managed as it was prior to and during the Chapter 11 Case, including as further described in Section 9.2 of this Plan.

**5.3** **Corporate Action.**

On the Effective Date, the matters under this Plan involving or requiring action of the Debtor, including execution of all documentation incident to this Plan, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Court or the officers of the Debtor.

**ARTICLE VI**
**DISTRIBUTIONS AND CLAIMS ADMINISTRATION**

**6.1** **Distributions.**

Subject to Section 6.3.4 of this Plan, distributions shall be made as set forth in the treatments of each class of Claims in Article IV of this Plan. Except as otherwise provided in this Plan, any payment under the Plan shall be made on or before the first business day of each month pursuant to the schedule contained in Exhibit C. For purposes of the biannual payments for Class 2-A, those payments shall be made on the first business day of June and the first business day of December each year pursuant to the schedule contained in Exhibit C. For the avoidance of doubt, the plan payments shall begin on September 2, 2025, or the first business day of the first month following the Effective Date, whichever is later.

**6.2** **Method of Payment.**

Payments under this Plan shall be made by check (mailed with first-class postage pre-paid), ACH, or wire transfer to the holder of each Allowed claim. If made by check, payments shall be mailed to the claim holder at the address listed on its proof of claim as of the Confirmation Date, or if no proof of claim has been filed by the Confirmation Date, to the address listed on the Schedules as of the Confirmation Date. If made by ACH or wire transfer, payments shall be made to the claim holder using the bank account or other routing information provided by the claim holder to the Debtor or the Reorganized Debtor. Holders of Allowed claims as of the Confirmation Date may contact the Reorganized Debtors to amend their addresses or bank account information at:

Twin Falls Oil Service, LLC
c/o Jeffery L Jacobson
840 11th Street E Dickinson
P.O. Box 720
Killdeer, ND 58640-0720

28

jeff@twinfallsoilservice.com

**6.3     Claims Administration.**

### 6.3.1     Reservation of Rights to Object to Claims.

Unless a claim is specifically Allowed under this Plan, or otherwise Allowed prior to or after the Effective Date, the Debtor reserves any and all objections to any and all claims and motions or requests for the payment of claims, including any and all objections to the validity or amount of any and all alleged Administrative Expense claims, Priority Tax Claims, liens, and security interests, under the Bankruptcy Code, other applicable law, or contract.

### 6.3.2     Filing of Objections.

Unless otherwise extended by the Court, any objections to claims other than Administrative Expense claims shall be filed within 120 days after the Effective Date or after the proof of claim is filed, whichever is later (unless such day is not a business day, in which case such deadline shall be the next business day thereafter).  An objection to a claim shall be deemed properly served on the claimholder if the Debtor or Reorganized Debtor effects service by any of the following methods: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as allowed and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a claim holder is unknown, by first-class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or interest or any attachment thereto; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on behalf of the claim holder in the Chapter 11 Case.

### 6.3.3     Determination of Claims.

Except as otherwise agreed by the Debtor, any claim as to which a proof of claim, motion, or request for payment was timely filed in the Chapter 11 Case may be determined and liquidated pursuant to: (a) an order of the Court; or (b) applicable non-bankruptcy law (which determination has not been stayed, reversed, or amended and the time to appeal or seek review or rehearing of such determination (or any revision, modification, or amendment thereof) has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), and shall be deemed in such liquidated amount and satisfied in accordance with this Plan. Nothing contained in this Plan, the Disclosure Statement, or the Confirmation Order shall constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the Debtor or the Debtor's estate may have against any person in connection with, or arising out of, any claim or claims, including any rights under section 157(b) of title 28 of the United States Code.

### 6.3.4     Procedures for Treating and Resolving Contested Claims.

No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until all objections to such Contested Claim have been settled, withdrawn, or determined by a Final Order and the Contested Claim has become an Allowed claim.  To the extent an objection is pending when a payment is scheduled to be paid pursuant to this Plan, the Debtor shall deposit the Contested Claim holder's pro rata share of the payment in the Contested Claim Reserve. If the Contested Claim is Allowed in the full amount, the Debtor shall pay the applicable

29

portion of the Contested Claim Reserve to the holder of the Contested Claim. If the Contested Claim is Allowed in a lesser amount, the Debtor shall pay the Contested Claim holder the pro rata share of the payment based on the new claim amount, with the remaining portion added to the next payment to be distributed on a pro rata basis to all creditors. If the Contested Claim is disallowed, the applicable pro rata share in the Contested Claim Reserve shall be included in the next payment.

The Debtor may request estimation or limitation of any Contested Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code; provided, however, that the Court shall determine: (a) whether such disputed claims are subject to estimation pursuant to section 502(c) of the Bankruptcy Code; and (b) the timing and procedures for such estimation proceedings, if any.

### 6.3.5   No Distribution if Cause of Action Asserted.

No payment or distribution shall be made with respect to all or any portion of a claim or Allowed claim held by a claim holder against whom a Cause of Action is asserted unless and until such Cause of Action has been settled, withdrawn, or determined by Final Order.

### 6.3.6   Setoffs.

The Reorganized Debtor may, pursuant to applicable non-bankruptcy law, set off against any distribution to be made pursuant to the Plan, the claims, rights, and Causes of Action of any nature the Debtor may hold against the holder of an Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim hereunder shall constitute a waiver or release of any such claims, rights, and Causes of Action that the Debtor holds or may hold against such holder.

### 6.3.7   Unclaimed Payments.

In the event a payment is returned to the Reorganized Debtor unclaimed, with no indication of the payee's forwarding address, the Reorganized Debtor shall hold such payment for a period of six months from the date of return. If not claimed by the payee at the end of that period, the payment shall become property of the Reorganized Debtor and shall be used for general working capital purposes and to make distributions under the Plan to other claim holders.

The Reorganized Debtor shall not be required to make additional payments on a claim for which a previous payment was returned to the Reorganized Debtor unclaimed. In the event that there are unclaimed funds at the end of the distribution process and all other Allowed claims are paid pursuant to Article IV of this Plan, the Reorganized Debtor shall retain such unclaimed funds. Any claims left unpaid due to the claim holder's failure to claim any payment shall nevertheless be discharged at the end of the distribution process.

### 6.3.8   Proofs of Claim Not Timely Filed.

If a proof of claim is required under Bankruptcy Rule 3003 and is not timely filed according to the provisions of the Bankruptcy Code, applicable Final Order in the Chapter 11 Case, or any other notice or order, the holder of such claim shall not be treated as a claim holder for purposes

of distribution under this Plan and shall receive no distribution under this Plan on account of such claim.

### 6.3.9    No Claim Transfers.

The date of the entry of the Confirmation Order shall be the last date on which a claim transfer shall be recognized.  Payments under the Plan shall be mailed  to the address of the holder of the claim as of such date until the holder of the claim notifies the Reorganized Debtor in writing of a different address.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.1.    Assumption or Rejection of Executory Contracts and Unexpired Leases.

Each Assumed Agreement shall be assumed as of the Effective Date, to the extent that each such Assumed Agreement has not already expired, concluded, or terminated under its own terms.  All other executory contracts, unexpired leases, or other agreements that are not Assumed Agreements and were not previously assumed or rejected by order of the Court in the Chapter 11 Case shall be deemed rejected as of the Effective Date. Entry of the Confirmation Order shall constitute, pursuant to sections 365 and 1123 of the Bankruptcy Code, the approval of the rejection of all such executory contracts, unexpired leases, and other agreements.

The Debtor reserves the right to alter, amend, remove from, or add to the list of Assumed Agreements at any time prior to the Confirmation Date.

### 7.2.    Cure of Defaults.

The Debtor proposed cure amounts for each Assumed Agreement and listed those proposed cure amounts on **Exhibit A**. Unless an objection is filed prior to entry of the Confirmation Order, then such amount shown on **Exhibit A** as "cure" shall be conclusively determined to be the amount required to cure any monetary or non-monetary default under any assumed executory contract or unexpired lease. Payments of any cure amount claims relating to the Assumed Agreements shall be made pursuant to Section 3.1 of the Plan.

### 7.3.    Bar Dates for Rejection Damage Claims.

To the extent not subject to a claim filing deadline set forth in any prior or subsequent notice or order, claims arising out of the rejection of an executory contracts or unexpired lease pursuant to Section 7.1 of the Plan must be filed with the Court within 30 days after the entry of the Confirmation Order and, upon allowance, shall be paid pursuant to Section 4.13 of the Plan.

## ARTICLE VIII
## CONFIRMATION OF THE PLAN

**8.1    Conditions Precedent to Effective Date.**

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until each of the following conditions have been satisfied:

(a)    The Court enters the Confirmation Order, the Confirmation Order becomes a Final Order, and no stay of the Confirmation Order is in effect;

(b)    The Debtor shall have sufficient cash on hand to pay obligations required to be paid on the Effective Date of this Plan or September 2, 2025, whichever occurs first; and

(c)    The Plan has not been materially amended, altered, or modified from this Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with Section 11.1 of this Plan.

**8.2    Notice of Effective Date.**

Within seven business days after the occurrence of the Effective Date, the Debtor shall file a notice of the Effective Date in the Chapter 11 Case.

**8.3    Cramdown.**

The Debtor requests confirmation under section 1129(b) of the Bankruptcy Code with respect to any impaired class that has not accepted or is deemed to not have accepted this Plan pursuant to section 1126 of the Bankruptcy Code.

## ARTICLE IX
## EFFECTS OF CONFIRMATION

**9.1.    Title to and Vesting of Assets.**

All property of the Debtor and its estate are dealt with by this Plan; therefore, on the Effective Date, to the full extent allowed by section 1141(b) of the Bankruptcy Code, all property of the Debtor and the estate vests in the Reorganized Debtor and such property is free and clear of all liens, encumbrances, claims, and interests of creditors, including any notices of *lis pendens*, except to the extent the Plan explicitly provides that such liens, encumbrances, claims, or interests are retained.

From and after the Effective Date, the Reorganized Debtor may operate, use, acquire, and dispose of property in accordance with the Plan, free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules, and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in this Plan.

On the Effective Date, the Reorganized Debtor shall be vested with, shall retain, and may, at its option, contest any claim or interest belonging to the estate, including all Causes of Action, to the extent not expressly released under this Plan or previously resolved by any Final Order of the Court.  No person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action as any indication that the Debtor or Reorganized Debtor shall not pursue any and all available Causes of Action. The Debtor expressly reserves all Causes of Action for later adjudication and, therefore, no preclusion doctrine shall apply to a Cause of Action upon, after, or as a consequence of the Confirmation Order.

The Reorganized Debtor may, at its option, compromise any Cause of Action, including Avoidance Claims, or any other claim, interest, or objection retained under this Plan after the Effective Date without notice, a hearing, and Court approval.  All recoveries on any Causes of Action, including Avoidance Claims, shall be retained by the Reorganized Debtor for use in making payments under this Plan or for general working capital purposes, at the Reorganized Debtor's option.

### 9.2.    Management of the Reorganized Debtor.

On and after the Effective Date, the Chief Executive Officer of the Debtor shall continue to be Jeffery L. Jacobson. Mr. Jacobson will continue to receive a monthly salary of $8,000, the same salary Mr. Jacobson received prepetition, subject to adjustment by the Reorganized Debtor in the ordinary course of its business operations after the Effective Date. The Reorganized Debtor may alter Mr. Jacobson's salary in its discretion and in accordance with state law.

### 9.3.    Discharge.

Except as otherwise provided in this Plan, confirmation of this Plan discharges, waives, and releases the Debtor from any debt or claim that arose before the Effective Date and any debt of a kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether or not: (a) a proof of claim was filed or deemed filed under section 501 of the Bankruptcy Code; (b) such claim is Allowed under section 502 of the Bankruptcy Code; or (c) the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.

### 9.4.    Injunction Related to Discharge.

Except as provided in this Plan, as of the occurrence of the Effective Date, all persons that have held, currently hold, or may have asserted a claim, a Cause of Action, or other debt, liability, or interest that is discharged, released, or terminated pursuant to the Plan, are hereby permanently enjoined from taking action against the Debtor or Reorganized Debtor with respect to such claim, Cause of Action, or other debt, liability, or interest, including by: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, collecting, or recovering in any manner any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any lien or encumbrance; or (d) asserting a set-off, right of subrogation, or recoupment of any kind. Nothing contained in this paragraph is intended to release, discharge, or enjoin any claims against any party other than the Debtor or Reorganized Debtor.

**9.5.    Cancellation of Instruments.**

On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtor, except such instruments that are authorized or issued under this Plan, shall be cancelled and extinguished. The holders of, or parties to, the cancelled notes and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments or the cancellation thereof, except any rights provided pursuant to this Plan.

**9.6.    Dissolution of the Committee.**

On the Effective Date, the official committee of unsecured creditors shall be dissolved, and the members thereof and the professionals retained thereby shall be released and discharged from their respective fiduciary obligations.

**9.7.    Reservation of Rights Regarding a Sale.**

The Reorganized Debtor reserves the right to sell substantially all assets. Any valid security interest in such assets will attach to the proceeds of the sale. Remaining proceeds will then be used to fund the distributions contemplated in this Plan. In the event of a sale of substantially all assets, the Reorganized Debtor will seek approval of such sale by motion before the Court.

**ARTICLE X**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Case after the Effective Date as is legally permissible, including jurisdiction to:

(a)    Allow, disallow, determine, liquidate, reduce, classify, re-classify, estimate, or establish the priority or secured or unsecured status of any claim, including the resolution of any request for payment of any claim for Administrative Expense and the resolution of any objections to the amount, allowance, priority, or classification of claims;

(b)    Resolve any issues arising under asset purchase agreements entered into during the case or their respective sale orders to the extent required for the implementation or execution of the Plan;

(c)    Determine all questions and disputes regarding title to the assets of the estate to the extent required for the implementation or execution of the Plan;

(d)    Either grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

(e)    Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or

34

with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any claims arising therefrom, including any cure amount claims;

(f)      Ensure that distributions to holders of Allowed claims are accomplished pursuant to the provisions of this Plan;

(g)      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters and either grant or deny any applications involving the Debtor that may be pending on the Effective Date or brought thereafter;

(h)      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, and other agreements or documents entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(i)      Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release, or other agreement or document that is entered into or delivered pursuant to this Plan, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents;

(j)      Modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code; modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court order, this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document entered into, delivered, or created in connection with this Plan, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(k)      Issue injunctions, enforce the injunctions contained in this Plan and the Confirmation Order, and enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of this Plan or the Confirmation Order;

(l)      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to this Plan are enjoined or stayed;

(m)      Determine any other matters that may arise in connection with or related to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Disclosure Statement, or the Confirmation Order;

(n)      Enforce or clarify any orders previously entered by the Court in the Chapter 11 Case;

35

(o)  Enter a final decree closing the Chapter 11 Case;

(p)  Determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any disputed claims for taxes;

(q)  Recover all assets of the Debtor and its estate, wherever located; and

(r)  Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

### 11.1.  Modification of the Plan.

Subject to the restrictions on alteration, amendment, and modification set forth in section 1127 of the Bankruptcy Code, the Debtor reserves the right to alter, amend, or modify this Plan before the Effective Date, including at any hearings on confirmation as are necessary to permit this Plan to be confirmed under section 1129(b) of the Bankruptcy Code.

### 11.2.  Revocation of the Plan.

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if the Court does not confirm the Plan, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor; (b) prejudice in any manner the rights of the Debtor or any other party in interest; or (c) constitute an admission of any sort by the Debtor or any other party in interest.

### 11.3.  Severability of Plan Provisions.

If, prior to the confirmation of the Plan, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 11.4.  Default.

Unless otherwise provided elsewhere in the Plan, default with respect to the Reorganized Debtor's obligations to any holder of Allowed claim under the Plan shall not occur unless and until such holder has delivered written notice of such default to the Reorganized Debtor and the Reorganized Debtor has failed to cure such default within 21 days after receipt of such written notice. Should any default remain uncured after the 21-day cure period, any interested party may seek any remedy available under the Bankruptcy Code or other applicable law.

**11.5.    Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**11.6.    Retiree Benefits.**

The Debtor has no retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code.

**11.7.    Debtor's Organizational Documents.**

The Limited Liability Company Operating Agreement of the Debtor, and all related organizational documents shall be amended to the extent necessary as required by section 1123(a)(6) of the Bankruptcy Code and as may otherwise be required.

**11.8.    Governmental Approval.**

This Plan affects no rates subject to approval by any governmental regulatory commission.

*[Remainder of page intentionally left blank. Signature page follows.]*

**IN WITNESS WHEREOF**, the undersigned have executed this Chapter 11 Plan of Reorganization as of the date and year set forth above.

**TWIN FALLS OIL SERVICE, LLC**

By:   Jeffery L. Jacobson
Its:   Owner


/e/ Steven R. Kinsella
Steven R. Kinsella (#09514)
Katherine A. Nixon (*pro hac vice* MN #0402772)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN  55402-4400
(612) 492-7000
skinsella@fredlaw.com
knixon@fredlaw.com

**ATTORNEYS FOR TWIN FALLS OIL SERVICE, LLC**

**TWIN FALLS OIL SERVICE, LLC**
**ASSUMED AGREEMENTS AND CURE AMOUNTS**
**EXHIBIT A - PLAN**
**Dated: July 15, 2025**

### INSURANCE CONTRACTS

| Counterparty | Agreement | Cure Amount |
|---|---|---|
| Houston Speciality Insurance Company | Insurance Contract - Commercial General Liability, Excess LIAB, Workers Compensation, and Employers' Liability | $0.00 |
| GuideOne National Insurance Co. | Insurance Contract - Pollution | $0.00 |
| General Star Indemnity Company | Insurance Contract - Umbrella liability | $0.00 |
| Great West Casualty Insurance | Insurance Contract - Automotive Liability | $0.00 |

### REAL PROPERTY LEASES

| Counterparty | Lease | Cure Amount |
|---|---|---|
| TF Holdings, LLC | 360 102X Avenue SW, Killdeer, ND 58640 | $0.00 |
| Horizon Development | 248 Alkali Way, Killdeer, ND 58640 | $0.00 |
| Horizon Development | 212 Alkali Way, Killdeer, ND 58640 | $0.00 |
| Horizon Development | 297 Alkali Way, Killdeer, ND 58640 | $0.00 |
| Horizon Development | 309 Alkali Way, Killdeer, ND 58640 | $0.00 |
| Horizon Development | 357 Alkali Way, Killdeer, ND 58640 | $0.00 |
| Jacobson Industries | 132 104S Avenue SW, Killdeer, ND 58640 | $0.00 |
| Kelsie Hutchinson | 12262 38th Street NW, Watford City, ND 58854 | $0.00 |
| RS Bakken One, LLC | 120 42nd Street SE, Watford City, ND 58854 | $0.00 |

### EQUIPMENT LEASES

| Counterparty | Lease Number | Serial Number | Year | Make | Model | Cure Amount |
|---|---|---|---|---|---|---|
| 5 Star Leasing, LLC | 1793 | *5330 | 2008 | Aspen | WINCH TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1794 | *5331 | 2008 | Aspen | WINCH TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1795 | *5299 | 1997 | Gerry's | WINCH TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1796 | *9023 | 2014 | PJ | WINCH TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1842 | *9717 | 2019 | Dragon | TANKER | $0.00 |
| 5 Star Leasing, LLC | 1843 | *9718 | 2019 | Dragon | TANKER | $0.00 |
| 5 Star Leasing, LLC | 1844 | *5028 | 2013 | Precision | SIDE DUMP | $0.00 |
| 5 Star Leasing, LLC | 1845 | *8890 | 2013 | Ford | PICKUP | $0.00 |
| 5 Star Leasing, LLC | 1846 | *0948 | 2014 | B&B | GOOSENECK DUMP TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1889 | *0434 | 2024 | Midland | SIDE DUMP | $0.00 |
| 5 Star Leasing, LLC | 1890 | *0435 | 2024 | Midland | SIDE DUMP | $0.00 |
| 5 Star Leasing, LLC | 1891 | *6273 | 2015 | Freightliner | TRACTOR | $0.00 |
| 5 Star Leasing, LLC | 1892 | *6274 | 2015 | Freightliner | TRACTOR | $0.00 |
| 5 Star Leasing, LLC | 1060 | *4509 | 2013 | Accel | TANKER | $0.00 |
| 5 Star Leasing, LLC | 1902 | *4878 | 2019 | Volvo | TRACTOR | $0.00 |
| 5 Star Leasing, LLC | 1948 | *1562 | 2018 | CDFBT | STEPDECK TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1949 | *1561 | 2019 | CDFBT | STEPDECK TRAILER | $0.00 |
| 5 Star Leasing, LLC | 1333 | *7123 | 2019 | Volvo | TRACTOR | $0.00 |
| TF Holdings, LLC | P-01 | *2271 | 2022 | DODGE | 3500 | $0.00 |
| TF Holdings, LLC | 5501 | *1054 | 2023 | MACK | TRACTOR | $0.00 |
| TF Holdings, LLC | 5502 | *1053 | 2023 | MACK | TRACTOR | $0.00 |
| TF Holdings, LLC | 5503 | *7604 | 2024 | MACK | TRACTOR | $0.00 |
| TF Holdings, LLC | 5504 | *5308 | 2024 | MACK | TRACTOR | $0.00 |
| TF Holdings, LLC | 5501 | *8013 | 2017 | UTILITY | 53' DRY VAN | $0.00 |
| TF Holdings, LLC | 5503 | *2809 | 2018 | UTILITY | 53' DRY VAN | $0.00 |
| TF Holdings, LLC | 5504 | *6708 | 2018 | UTILITY | 53' DRY VAN | $0.00 |
| TF Holdings, LLC | 5505 | *6714 | 2018 | UTILITY | 53' DRY VAN | $0.00 |

**TWIN FALLS OIL SERVICE, LLC**
**EQUIPMENT SCHEDULE**
**EXHIBIT B - PLAN**
**Dated: July 15, 2025**

| PICKUPS/TRAILERS | | | | | |
|---|---|---|---|---|---|
| Name | Serial Number | Year | Make | Model | Secured Lender |
| P-02 | *5346 | 2012 | DODGE | 3500 | First International |
| P-03 | *0576 | 2010 | CHEVROLET | 1500 | First International |
| P-04 | *6953 | 2011 | FORD | F150 | First International |
| P-05 | *3188 | 2012 | CHEVROLET | K3500 | First International |
| P-07 | *6664 | 2018 | DODGE | 3500 FLATBED | CIT |
| P-08 | *8723 | 2018 | DODGE | 3500 FLATBED | CIT |
| P-10 | *2948 | 2004 | CHEVROLET | 5500 SERVICE BODY | First International |
| P-11 | *2003 | 2011 | FORD | F250 SERVICE BODY | First International |
| P-13 | *5274 | 2010 | GMC | 1500 | First International |
| | *3641 | 2012 | PJ Trailer MFG | Gooseneck Trailer | First International |
| | *3208 | 2005 | PJ Trailer MFG | Bumper Hitch Carhauler | First International |
| | *3054 | 2013 | MIDWEST IND | 500N | First International |
| | *0183 | 2020 | PJ TRAILER | TJ222 | First International |

| SEMI TRACTORS | | | | | |
|---|---|---|---|---|---|
| Name | Serial Number | Year | Make | Model | Secured Lender |
| 2 | *5791 | 1997 | Kenworth | 3 AXLE | First International |
| 4 | *1762 | 2015 | VOLVO VHD | 4 AXLE | First International |
| 6 | *1841 | 2015 | VOLVO VHD | 4 AXLE | First International |
| 26 | *2670 | 2015 | VOLVO VHD | 4 AXLE | First International |
| 30 | *6184 | 2019 | VOLVO VHD | 4 AXLE | First International |
| 32 | *6185 | 2019 | VOLVO VHD | 4 AXLE | First International |
| 38 | *1210 | 2019 | VOLVO VHD | 4 AXLE | First International |
| 39 | *5503 | 2012 | Western Star | 4 AXLE | First International |
| 42 | *2121 | 2004 | Freightliner | 3 AXLE | First International |
| 43 | *9706 | 2007 | Freightliner | 3 AXLE | First International |
| 45 | *8709 | 2020 | VOLVO VHD | 4 AXLE | First International |
| 46 | *8710 | 2020 | VOLVO VHD | 4 AXLE | First International |
| 48 | *8958 | 2020 | VOLVO VHD | 4 AXLE | First International |
| 49 | *8957 | 2020 | VOLVO VHD | 4 AXLE | First International |
| 50 | *8960 | 2020 | VOLVO VHD | 4 AXLE | Volvo |
| 51 | *8961 | 2020 | VOLVO VHD | 4 AXLE | Volvo |
| 52 | *8962 | 2020 | VOLVO VHD | 4 AXLE | Volvo |
| 53 | *7976 | 2023 | VOLVO VHD | 4 AXLE | Volvo |
| 54 | *17978 | 2023 | VOLVO VHD | 4 AXLE | Volvo |
| 55 | *7979 | 2023 | VOLVO VHD | 4 AXLE | Volvo |
| 56 | *7977 | 2023 | VOLVO VHD | 4 AXLE | Volvo |
| 57 | *8718 | 2012 | FREIGHTLINER | CASCADIA | CIT |
| 58 | *8995 | 2015 | FREIGHTLINER | CASCADIA | CIT |
| 59 | *8997 | 2015 | FREIGHTLINER | CASCADIA | CIT |
| 62 | *6398 | 2024 | VOLVO VHD | 4 AXLE | BMO |
| 63 | *6396 | 2024 | VOLVO VHD | 4 AXLE | Bell Bank |
| 64 | *6400 | 2024 | VOLVO VHD | 4 AXLE | Volvo |
| 67 | *9732 | 2007 | Peterbuilt | | Balboa |
| 3004 | *9298 | 2007 | KENWORTH W900 | WINCH TRUCK | Balboa |
| 2002 | *2644 | 2013 | KENWORTH T800 | HYDROVAC | First International |
| 2004 | *2717 | 2015 | KENWORTH T800 | HYDROVAC | U.S. Bank |

| 2005 | *2718 | 2015 | KENWORTH T800 | HYDROVAC | CIT |
| 2006 | *6655 | 2019 | Western Star | HYDROVAC | De Lage |
| 3001 | *0447 | 2003 | KENWORTH T800 | WINCH TRUCK | First International |
| 3002 | *8519 | 2012 | KENWORTH T800 | WINCH TRUCK | First International |
| 3003 | *0952 | 2013 | KENWORTH T800 | WINCH TRUCK | Marlin |

### SEMI TRAILERS

| Name | Serial Number | Year | Make | Model | Secured Lender |
|---|---|---|---|---|---|
| 301 | *8534 | 2013 | Galyeon | VAC | First International |
| 302 | *9719 | 2015 | Troxell | VAC | First International |
| 303 | *9773 | 2015 | Troxell | VAC | First International |
| 305 | *9321 | 2015 | Troxell | VAC | First International |
| 307 | *9017 | 2014 | Troxell | VAC | First International |
| 308 | *8114 | 2014 | Dragon | VAC | First International |
| 311 | *9004 | 2011 | Reitnouer | VAC | First International |
| 314 | *4128 | 2011 | ARTC | VAC | First International |
| 316 | *7977 | 2011 | Galyeon | VAC | First International |
| 317 | *1907 | 2012 | DRAGON | VAC | First International |
| 601 | *8710 | 1997 | RANCO | BELLY DUMP | First International |
| 602 | *2975 | 1997 | TRAIL KING | BELLY DUMP | First International |
| 603 | *1375 | 2008 | LOAD KING | BELLY DUMP | First International |
| 604 | *1559 | 1993 | R-WAY | BELLY DUMP | First International |
| 605 | *0404 | 1992 | FRUEHAUF | BELLY DUMP | First International |
| 606 | *8433 | 1994 | LOAD KING | BELLY DUMP | First International |
| 607 | *8361 | 1999 | R-WAY | BELLY DUMP | First International |
| 609 | *8052 | 1996 | RANCHO | BELLY DUMP | First International |
| 701 | *3601 | 1983 | FRUEHAUF | FLAT BED | First International |
| 702 | *0367 | 2001 | RAVENS | FLAT BED | First International |
| 751 | *0730 | 2012 | TRANSCRAFT | 53' STEP DECK BEAVER TAIL | First International |
| 752 | *5558 | 2012 | TRANSCRAFT | 45' STEP DECK | First International |
| 753 | *5482 | 2007 | TRANSCRAFT | 45' STEP DECK | First International |
| 756 | *0533 | 2012 | PITTS | 53' STEP DECK BEAVER TAIL | Balboa |
| 800 | *5482 | | | 40 TON TAIL ROLL | First International |
| 5502 | *3538 | 2007 | STOUGHTON | 53' DRY VAN | First International |

### MISC EQUIPMENT

| Name | Serial Number | Year | Make | Model | Secured Lender |
|---|---|---|---|---|---|
| | *1640 | 2006 | CAT | 930G Loader | First International |
| | | 2016 | John Deere | Skidsteer | First International |
| | | | Milller | Welder | First International |
| | | | Quincy | Air Compressor | First International |
| | | | | Air Compressor | First International |
| | | | | Air Compressor | First International |
| | | | Shed | | First International |
| | | | Shipping Container | | First International |
| | | | Shipping Container | | First International |
| | | | Shipping Container | | First International |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
Dated: July 15, 2025

| Cash Flow Summary | Partial 2025 | 2026 | 2027 | 2028 | 2029 | Partial 2030 | Totals |
|---|---|---|---|---|---|---|---|
| **Opening Balance** | $ 161,717.00 | $ 104,063.18 | $ 103,699.57 | $ 161,805.77 | $ 228,925.51 | $ 181,991.15 | |
| | | | | | | | |
| Projected Revenue | $ 3,770,000.00 | $ 11,700,000.00 | $ 13,350,000.00 | $ 14,900,000.00 | $ 15,550,000.00 | 10,650,000.00 | |
| Projected Operating Expenses | $ 3,482,100.00 | $ 10,492,900.00 | $ 11,610,500.00 | $ 12,582,800.00 | $ 12,895,600.00 | 6,486,800.00 | |
| **Plan Payments** | | | | | | | Totals |
| Administrative Expense Claims | $ 110,000.00 | $ 20,000.00 | $ - | $ - | $ - | $ - | $ 130,000.00 |
| Priority Claims | $ 16,000.00 | $ 48,000.00 | $ 48,000.00 | $ 144,000.00 | $ 144,000.00 | 171,642.29 | $ 571,642.29 |
| Distributions to Class 1-A (First International) | $ 75,454.40 | $ 385,015.77 | $ 626,182.96 | $ 626,182.96 | $ 626,182.96 | 1,109,392.29 | $ 3,448,411.34 |
| Distributions to Class 1-B (Quickbridge) | $ 899.77 | $ 6,748.32 | $ 33,741.48 | $ 94,476.16 | $ 161,959.16 | 40,508.12 | $ 338,333.00 |
| Distributions to Class 1-C (Samson) | $ 2,513.13 | $ 18,848.46 | $ 94,242.32 | $ 263,878.50 | $ 452,363.14 | 113,141.96 | $ 944,987.51 |
| Distributions to Class 1-D (IRS) | $ 4,411.90 | $ 33,089.26 | $ 165,446.26 | $ 463,249.54 | $ 794,142.08 | 198,625.36 | $ 1,658,964.40 |
| Distributions to Class 1-E (CIT) | $ 21,089.44 | $ 126,536.64 | $ 58,717.90 | $ - | $ - | $ - | $ 206,343.98 |
| Distributions to Class 1-F (Marlin) | $ 5,255.88 | $ 17,374.40 | $ - | $ - | $ - | $ - | $ 22,630.28 |
| Distributions to Class 1-G (Volvo) | $ 56,008.54 | $ 308,046.98 | $ 336,051.24 | $ 251,407.96 | $ - | $ - | $ 951,514.72 |
| Distributions to Class 1-H (Bell Bank) | $ 7,845.60 | $ 43,150.18 | $ 47,073.48 | $ 47,073.48 | $ 19,613.86 | $ - | $ 164,756.60 |
| Distributions to Class 1-I (BMO) | $ 7,956.16 | $ 43,758.88 | $ 47,736.96 | $ 47,736.96 | $ 42,668.56 | $ - | $ 189,857.52 |
| Distributions to Class 1-J (De Lage) | $ 11,478.16 | $ 63,129.88 | $ 68,868.96 | $ 68,868.96 | $ 68,868.96 | 51,651.72 | $ 332,866.64 |
| Distributions to Class 1-K (Balboa) | $ 12,293.72 | $ 40,935.11 | $ 73,762.32 | $ 14,809.94 | $ - | $ - | $ 141,801.09 |
| Distributions to Class 1-L (US Bank) | $ 12,171.92 | $ 36,515.76 | $ - | $ - | $ - | $ - | $ 48,687.68 |
| Distributions to Class 2-A (Unsecured Claims) | $ 2,175.20 | $ 16,313.98 | $ 81,569.92 | $ 228,395.80 | $ 391,535.64 | 97,928.21 | $ 817,918.75 |
| Distributions to Class 2-B (Insider Claims) | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Plan Payments** | $ 345,553.82 | $ 1,207,463.62 | $ 1,681,393.80 | $ 2,250,080.26 | $ 2,701,334.36 | $ 1,782,889.95 | $ 9,968,715.80 |
| | | | | | | | |
| **Ending Balance** | $ 104,063.18 | $ 103,699.57 | $ 161,805.77 | $ 228,925.51 | $ 181,991.15 | $ 773,461.55 | |
| | | | | | | | |
| **Net Income After Plan Payments** | $ (57,653.82) | $ (363.62) | $ 58,106.20 | $ 67,119.74 | $ (46,934.35) | $ 591,470.40 | |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
**Dated: July 15, 2025**

| 2025 | September | October | November | December | Total |
|---|---|---|---|---|---|
| **Beginning Cash** | $ 161,717.00 | $ 129,110.62 | $ 143,261.47 | $ 132,412.33 | |
| | | | | | |
| **Projected Revenue** | | | | | |
| Accounts Receivable | $ 1,000,000.00 | $ 1,000,000.00 | $ 900,000.00 | $ 850,000.00 | $ 3,750,000.00 |
| Equipment Lease | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 20,000.00 |
| **Total Projected Revenue** | $ 1,005,000.00 | $ 1,005,000.00 | $ 905,000.00 | $ 855,000.00 | $ 3,770,000.00 |
| | | | | | |
| **Projected Operating Expenses** | | | | | |
| Payroll-Current Includes Net Pay and Payroll Taxes | $ 460,000.00 | $ 460,000.00 | $ 414,000.00 | $ 391,000.00 | $ 1,725,000.00 |
| Commercial Insurance | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 48,000.00 | $ 192,000.00 |
| Utilities | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 40,000.00 |
| Killdeer Shop Rent | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 7,500.00 | $ 30,000.00 |
| Watford Shop Rent | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 18,000.00 |
| Killdeer Housing Rent/Utilities | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 24,000.00 |
| Watford Housing Rent/Utilities | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 9,600.00 |
| Fuel-Diesel | $ 128,000.00 | $ 150,000.00 | $ 135,000.00 | $ 127,500.00 | $ 540,500.00 |
| Parts for Maintenance and Repairs | $ 80,000.00 | $ 100,000.00 | $ 100,000.00 | $ 100,000.00 | $ 380,000.00 |
| Software/Technology/IT | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 8,000.00 | $ 32,000.00 |
| Workers Comp - ND WSI | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 60,000.00 |
| Subcontractors/Brokerage | $ 36,000.00 | $ 40,000.00 | $ 36,000.00 | $ 34,000.00 | $ 146,000.00 |
| Equipment Leases | $ 16,000.00 | $ 16,000.00 | $ 16,000.00 | $ 16,000.00 | $ 64,000.00 |
| Reimburseable Expenses | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 15,000.00 | $ 60,000.00 |
| Miscellaneous | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 16,000.00 |
| Legal Counsel | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 40,000.00 |
| Financial Advisor | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 20,000.00 |
| Tax preparation | $ 5,000.00 | $ - | $ - | $ - | $ 5,000.00 |
| Licenses | $ 80,000.00 | $ - | $ - | $ - | $ 80,000.00 |
| **Total Operating Expenses** | $ 940,400.00 | $ 901,400.00 | $ 836,400.00 | $ 803,900.00 | $ 3,482,100.00 |
| | | | | | |
| **Plan Payments** | | | | | |
| Administrative Expense Claims | $ 50,000.00 | $ 30,000.00 | $ 20,000.00 | $ 10,000.00 | $ 110,000.00 |
| Priority Claims | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 16,000.00 |
| Class 1-A (First International) | $ 9,681.53 | $ 21,924.29 | $ 21,924.29 | $ 21,924.29 | $ 75,454.40 |
| Class 1-B (QuickBridge) | $ - | $ - | $ - | $ 899.77 | $ 899.77 |
| Class 1-C (Samson) | $ - | $ - | $ - | $ 2,513.13 | $ 2,513.13 |
| Class 1-D (IRS) | $ - | $ - | $ - | $ 4,411.90 | $ 4,411.90 |
| Class 1-E (CIT) | $ 5,272.36 | $ 5,272.36 | $ 5,272.36 | $ 5,272.36 | $ 21,089.44 |
| Class 1-F (Marlin) | $ 1,313.97 | $ 1,313.97 | $ 1,313.97 | $ 1,313.97 | $ 5,255.88 |
| Class 1-G (Volvo) | $ 14,002.14 | $ 14,002.14 | $ 14,002.14 | $ 14,002.14 | $ 56,008.54 |
| Class 1-H (Bell Bank) | $ 1,961.40 | $ 1,961.40 | $ 1,961.40 | $ 1,961.40 | $ 7,845.60 |
| Class 1-I (BMO) | $ 1,989.04 | $ 1,989.04 | $ 1,989.04 | $ 1,989.04 | $ 7,956.16 |
| Class 1-J (De Lage) | $ 2,869.54 | $ 2,869.54 | $ 2,869.54 | $ 2,869.54 | $ 11,478.16 |
| Class 1-K (Balboa) | $ 3,073.43 | $ 3,073.43 | $ 3,073.43 | $ 3,073.43 | $ 12,293.72 |
| Class 1-L (US Bank) | $ 3,042.98 | $ 3,042.98 | $ 3,042.98 | $ 3,042.98 | $ 12,171.92 |
| Class 2-A (Unsecured Claims) | $ - | $ - | $ - | $ 2,175.20 | $ 2,175.20 |
| Class 2-B (Insider Claims) | $ - | $ - | $ - | $ - | $ - |
| **Total Plan Payments** | $ 97,206.39 | $ 89,449.15 | $ 79,449.15 | $ 79,449.15 | $ 345,553.82 |
| | | | | | |
| **Net Income** | $ (32,606.39) | $ 14,150.86 | $ (10,849.15) | $ (28,349.15) | |
| | | | | | |
| **Ending Cash Balance** | $ 129,110.62 | $ 143,261.47 | $ 132,412.33 | $ 104,063.18 | |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
**Dated: July 15, 2025**

| 2026 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 104,063.18 | $ 94,141.93 | $ 86,720.68 | $ 59,859.62 | 62,685.63 | 93,511.64 | 78,524.72 | 122,850.73 | 181,376.79 | 153,876.48 | 218,063.25 | 253,750.02 | |
| **Projected Revenue** | | | | | | | | | | | | | |
| Accounts Receivable | $ 850,000.00 | $ 850,000.00 | $ 900,000.00 | $ 950,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,050,000.00 | $ 1,050,000.00 | $ 1,050,000.00 | $ 1,050,000.00 | $ 1,000,000.00 | $ 950,000.00 | $ 11,700,000.00 |
| **Total Projected Revenue** | $ 850,000.00 | $ 850,000.00 | $ 900,000.00 | $ 950,000.00 | $ 1,000,000.00 | $ 1,000,000.00 | $ 1,050,000.00 | $ 1,050,000.00 | $ 1,050,000.00 | $ 1,050,000.00 | $ 1,000,000.00 | $ 950,000.00 | $ 11,700,000.00 |
| **Projected Operating Expenses** | | | | | | | | | | | | | |
| Payroll-Current Includes Net Pay and Payroll Taxes | $ 382,500.00 | $ 382,500.00 | $ 405,000.00 | $ 427,500.00 | 440,000.00 | 440,000.00 | 462,000.00 | 462,000.00 | 462,000.00 | 462,000.00 | 450,000.00 | 427,500.00 | $ 5,203,000.00 |
| Commercial Insurance | $ 49,000.00 | $ 49,000.00 | $ 49,000.00 | $ 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | 49,000.00 | $ 588,000.00 |
| Utilities | $ 10,200.00 | $ 10,200.00 | $ 10,200.00 | $ 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | 10,200.00 | $ 122,400.00 |
| Killdeer Shop Rent | $ 7,700.00 | $ 7,700.00 | $ 7,700.00 | $ 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 | 7,700.00 | $ 92,400.00 |
| Watford Shop Rent | $ 4,600.00 | $ 4,600.00 | $ 4,600.00 | $ 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | 4,600.00 | $ 55,200.00 |
| Killdeer Housing Rent/Utilities | $ 6,100.00 | $ 6,100.00 | $ 6,100.00 | $ 6,100.00 | 6,100.00 | 6,100.00 | 6,100.00 | 6,100.00 | 6,100.00 | 6,100.00 | 6,100.00 | 6,100.00 | $ 73,200.00 |
| Watford Housing Rent/Utilities | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | $ 28,800.00 |
| Fuel-Diesel | $ 127,500.00 | $ 127,500.00 | $ 135,000.00 | $ 142,500.00 | 150,000.00 | 150,000.00 | 157,500.00 | 157,500.00 | 157,500.00 | 157,500.00 | 150,000.00 | 142,500.00 | $ 1,755,000.00 |
| Parts for Maintenance and Repairs | $ 102,000.00 | $ 102,000.00 | $ 102,000.00 | $ 102,000.00 | 102,000.00 | 102,000.00 | 102,000.00 | 102,000.00 | 102,000.00 | 102,000.00 | 102,000.00 | 102,000.00 | $ 1,224,000.00 |
| Software/Technology/IT | $ 8,200.00 | $ 8,200.00 | $ 8,200.00 | $ 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | 8,200.00 | $ 98,400.00 |
| Workers Comp - ND WSI | $ 15,300.00 | $ 15,300.00 | $ 15,300.00 | $ 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | $ 183,600.00 |
| Subcontractors/Brokerage | $ 34,000.00 | $ 34,000.00 | $ 36,000.00 | $ 38,000.00 | 40,000.00 | 40,000.00 | 42,000.00 | 42,000.00 | 42,000.00 | 42,000.00 | 40,000.00 | 38,000.00 | $ 468,000.00 |
| Equipment Leases | $ 16,300.00 | $ 16,300.00 | $ 16,300.00 | $ 16,300.00 | 16,300.00 | 16,300.00 | 16,300.00 | 16,300.00 | 16,300.00 | 16,300.00 | 16,300.00 | 16,300.00 | $ 195,600.00 |
| Reimbursable Expenses | $ 15,300.00 | $ 15,300.00 | $ 15,300.00 | $ 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | 15,300.00 | $ 183,600.00 |
| Miscellaneous | $ 4,100.00 | $ 4,100.00 | $ 4,100.00 | $ 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | 4,100.00 | $ 49,200.00 |
| Legal Counsel | $ - | $ - | $ 10,000.00 | $ - | - | 10,000.00 | - | - | 10,000.00 | - | - | 10,000.00 | $ 40,000.00 |
| Financial Advisor | $ - | $ 2,500.00 | $ - | $ 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | $ 47,500.00 |
| Tax preparation | $ - | $ - | $ - | $ - | - | - | 5,000.00 | - | - | - | - | - | $ 5,000.00 |
| Licenses | $ - | $ - | $ - | $ - | - | - | - | - | 80,000.00 | - | - | - | $ 80,000.00 |
| **Total Operating Expenses** | $ 785,200.00 | $ 787,700.00 | $ 827,200.00 | $ 854,200.00 | 876,200.00 | 886,200.00 | 912,700.00 | 907,700.00 | 997,700.00 | 907,700.00 | 886,200.00 | 864,200.00 | $ 10,492,900.00 |
| **Plan Payments** | | | | | | | | | | | | | |
| Administrative Expense Claims | $ 10,000.00 | $ 5,000.00 | $ 5,000.00 | $ - | - | - | - | - | - | - | - | - | $ 20,000.00 |
| Priority Claims | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | $ 48,000.00 |
| Class 1-A (First International) | $ 21,924.29 | $ 21,924.29 | $ 21,924.29 | $ 21,924.29 | 21,924.29 | 21,924.29 | 21,924.29 | 21,924.29 | 21,924.29 | 21,924.29 | 21,924.29 | 143,848.58 | $ 385,015.77 |
| Class 1-B (QuickBridge) | $ - | $ - | $ 1,687.08 | $ - | - | 1,687.08 | - | - | 1,687.08 | - | - | 1,687.08 | $ 6,748.32 |
| Class 1-C (Samson) | $ - | $ - | $ - | $ - | - | 9,424.23 | - | - | - | - | - | 9,424.23 | $ 18,848.46 |
| Class 1-D (IRS) | $ - | $ - | $ - | $ - | - | 16,544.63 | - | - | - | - | - | 16,544.63 | $ 33,089.26 |
| Class 1-E (CIT) | $ 10,544.72 | $ 10,544.72 | $ 10,544.72 | $ 10,544.72 | 10,544.72 | 10,544.72 | 10,544.72 | 10,544.72 | 10,544.72 | 10,544.72 | 10,544.72 | 10,544.72 | $ 126,536.64 |
| Class 1-F (Marlin) | $ 1,313.97 | $ 1,313.97 | $ 2,627.94 | $ 2,627.94 | 2,627.94 | 2,627.94 | 2,627.94 | 1,606.76 | - | - | - | - | $ 17,374.40 |
| Class 1-G (Volvo) | $ 14,002.14 | $ 14,002.14 | $ 28,004.27 | $ 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | $ 308,046.98 |
| Class 1-H (Bell Bank) | $ 1,961.14 | $ 1,961.14 | $ 3,922.79 | $ 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | $ 43,150.18 |
| Class 1-I (BMO) | $ 1,989.04 | $ 1,989.04 | $ 3,978.08 | $ 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | $ 43,758.88 |
| Class 1-J (De Lage) | $ 2,869.54 | $ 2,869.54 | $ 5,739.08 | $ 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | $ 63,129.88 |
| Class 1-K (Balboa) | $ 3,073.43 | $ 3,073.43 | $ 6,146.86 | $ 6,146.86 | 6,146.86 | 6,146.86 | 6,146.86 | 4,053.55 | - | - | - | - | $ 40,935.11 |
| Class 1-L (US Bank) | $ 3,042.98 | $ 3,042.98 | $ 6,085.96 | $ 6,085.96 | 6,085.96 | 6,085.96 | 6,085.96 | - | - | - | - | - | $ 36,515.76 |
| Class 2-A (Unsecured Claims) | $ - | $ - | $ - | $ - | - | 8,156.99 | - | - | - | - | - | 8,156.99 | $ 16,313.98 |
| Class 2-B (Insider Claims) | $ - | $ - | $ - | $ - | - | - | - | - | - | - | - | - | $ - |
| **Total Plan Payments** | $ 74,721.25 | $ 69,721.25 | $ 99,661.07 | $ 92,973.99 | 92,973.99 | 128,786.92 | 92,973.99 | 83,773.94 | 79,800.31 | 78,113.23 | 78,113.23 | 235,850.45 | $ 1,207,463.62 |
| **Net Income** | $ (9,921.25) | $ (7,421.25) | $ (26,861.07) | $ 2,826.01 | 30,826.01 | (14,986.92) | 44,326.01 | 58,526.06 | (27,500.31) | 64,186.77 | 35,686.77 | (150,050.45) | |
| **Ending Cash Balance** | $ 94,141.93 | $ 86,720.68 | $ 59,859.62 | $ 62,685.63 | 93,511.64 | 78,524.72 | 122,850.73 | 181,376.79 | 153,876.48 | 218,063.25 | 253,750.02 | 103,699.57 | |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
Dated: July 15, 2025

| 2027 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 103,699.57 | $ 88,515.19 | $ 73,330.81 | $ 52,711.06 | $ 109,526.68 | $ 177,842.30 | $ 61,643.72 | $ 159,004.06 | $ 256,364.40 | $ 255,289.37 | $ 334,149.71 | $ 401,510.05 | |
| | | | | | | | | | | | | | |
| **Projected Revenue** | | | | | | | | | | | | | |
| Accounts Receivable | $ 950,000.00 | $ 950,000.00 | $ 1,000,000.00 | $ 1,150,000.00 | $ 1,150,000.00 | $ 1,150,000.00 | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,150,000.00 | $ 1,150,000.00 | $ 1,100,000.00 | $ 13,350,000.00 |
| **Total Projected Revenue** | $ 950,000.00 | $ 950,000.00 | $ 1,000,000.00 | $ 1,150,000.00 | $ 1,150,000.00 | $ 1,150,000.00 | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,150,000.00 | $ 1,150,000.00 | $ 1,100,000.00 | $ 13,350,000.00 |
| | | | | | | | | | | | | | |
| **Projected Operating Expenses** | | | | | | | | | | | | | |
| Payroll-Current Includes Net Pay and Payroll Taxes | $ 427,500.00 | $ 427,500.00 | 450,000.00 | $ 517,500.00 | 506,000.00 | $ 506,000.00 | 528,000.00 | $ 528,000.00 | 528,000.00 | 506,000.00 | $ 517,500.00 | 495,000.00 | $ 5,937,000.00 |
| Commercial Insurance | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 50,000.00 | $ 600,000.00 |
| Utilities | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 10,400.00 | $ 124,800.00 |
| Killdeer Shop Rent | $ 7,900.00 | $ 7,900.00 | 7,900.00 | $ 7,900.00 | 7,900.00 | $ 7,900.00 | 7,900.00 | $ 7,900.00 | 7,900.00 | 7,900.00 | $ 7,900.00 | 7,900.00 | $ 94,800.00 |
| Watford Shop Rent | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 56,400.00 |
| Killdeer Housing Rent/Utilities | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 6,200.00 | $ 74,400.00 |
| Watford Housing Rent/Utilities | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 28,800.00 |
| Fuel-Diesel | $ 142,500.00 | $ 142,500.00 | 150,000.00 | $ 172,500.00 | 172,500.00 | $ 172,500.00 | 180,000.00 | $ 180,000.00 | 180,000.00 | 172,500.00 | $ 172,500.00 | 165,000.00 | $ 2,002,500.00 |
| Parts for Maintenance and Repairs | $ 104,000.00 | $ 104,000.00 | 104,000.00 | $ 104,000.00 | 104,000.00 | $ 104,000.00 | 104,000.00 | $ 104,000.00 | 104,000.00 | 104,000.00 | $ 104,000.00 | 104,000.00 | $ 1,248,000.00 |
| Software/Technology/IT | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 8,400.00 | $ 100,800.00 |
| Workers Comp - ND WSI | $ 15,600.00 | $ 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | $ 187,200.00 |
| Subcontractors/Brokerage | $ 38,000.00 | $ 38,000.00 | 40,000.00 | $ 46,000.00 | 46,000.00 | $ 46,000.00 | 48,000.00 | $ 48,000.00 | 48,000.00 | 46,000.00 | $ 46,000.00 | 44,000.00 | $ 534,000.00 |
| Equipment Leases | $ 16,600.00 | $ 16,600.00 | 16,600.00 | $ 16,600.00 | 16,600.00 | $ 16,600.00 | 16,600.00 | $ 16,600.00 | 16,600.00 | 16,600.00 | $ 16,600.00 | 16,600.00 | $ 199,200.00 |
| Reimbuseable Expenses | $ 15,600.00 | $ 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | 15,600.00 | $ 15,600.00 | 15,600.00 | $ 187,200.00 |
| Miscellaneous | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 4,200.00 | $ 50,400.00 |
| Legal Counsel | $    - | $    - | 10,000.00 | $    - | $    - | $ 10,000.00 | $    - | $    - | 10,000.00 | $    - | $    - | 10,000.00 | $ 40,000.00 |
| Financial Advisor | $ 5,000.00 | $ 5,000.00 | 5,000.00 | $ 5,000.00 | 5,000.00 | $ 5,000.00 | 5,000.00 | $ 5,000.00 | 5,000.00 | 5,000.00 | $ 5,000.00 | 5,000.00 | $ 60,000.00 |
| Tax preparation | $    - | $    - | 5,000.00 | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | |
| Licenses | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | 80,000.00 | $    - | $    - | $    - | $ 80,000.00 |
| **Total Operating Expenses** | $ 859,000.00 | $ 859,000.00 | $ 906,000.00 | $ 987,000.00 | $ 975,500.00 | $ 985,500.00 | $ 1,007,000.00 | $ 1,007,000.00 | $ 1,097,000.00 | $ 975,500.00 | $ 987,000.00 | $ 965,000.00 | $ 11,610,500.00 |
| | | | | | | | | | | | | | |
| **Plan Payments** | | | | | | | | | | | | | |
| Administrative Expense Claims | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| Priority Claims | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $    - | $ 48,000.00 |
| Class 1-A (First International) | $ 43,848.58 | $ 43,848.58 | 43,848.58 | $ 43,848.58 | 43,848.58 | $ 43,848.58 | 43,848.58 | $ 43,848.58 | 43,848.58 | 43,848.58 | $ 43,848.58 | 143,848.58 | $ 626,182.96 |
| Class 1-B (QuickBridge) | $    - | $    - | 8,435.37 | $    - | $    - | $ 8,435.37 | $    - | $    - | 8,435.37 | $    - | $    - | 8,435.37 | $ 33,741.48 |
| Class 1-C (Samson) | $    - | $    - | $    - | $    - | $    - | $ 47,121.16 | $    - | $    - | $    - | $    - | $    - | 47,121.16 | $ 94,242.32 |
| Class 1-D (IRS) | $    - | $    - | $    - | $    - | $    - | $ 82,723.13 | $    - | $    - | $    - | $    - | $    - | 82,723.13 | $ 165,446.26 |
| Class 1-E (CIT) | $ 10,544.72 | $ 10,544.72 | 10,544.72 | $ 10,544.72 | 10,544.72 | $ 5,994.30 | $    - | $    - | $    - | $    - | $    - | $    - | $ 58,717.90 |
| Class 1-F (Marlin) | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| Class 1-G (Volvo) | $ 28,004.27 | $ 28,004.27 | 28,004.27 | $ 28,004.27 | 28,004.27 | $ 28,004.27 | 28,004.27 | $ 28,004.27 | 28,004.27 | 28,004.27 | $ 28,004.27 | 28,004.27 | $ 336,051.24 |
| Class 1-H (Bell Bank) | $ 3,922.79 | $ 3,922.79 | 3,922.79 | $ 3,922.79 | 3,922.79 | $ 3,922.79 | 3,922.79 | $ 3,922.79 | 3,922.79 | 3,922.79 | $ 3,922.79 | 3,922.79 | $ 47,073.48 |
| Class 1-I (BMO) | $ 3,978.08 | $ 3,978.08 | 3,978.08 | $ 3,978.08 | 3,978.08 | $ 3,978.08 | 3,978.08 | $ 3,978.08 | 3,978.08 | 3,978.08 | $ 3,978.08 | 3,978.08 | $ 47,736.96 |
| Class 1-J (De Lage) | $ 5,739.08 | $ 5,739.08 | 5,739.08 | $ 5,739.08 | 5,739.08 | $ 5,739.08 | 5,739.08 | $ 5,739.08 | 5,739.08 | 5,739.08 | $ 5,739.08 | 5,739.08 | $ 68,868.96 |
| Class 1-K (Balboa) | $ 6,146.86 | $ 6,146.86 | 6,146.86 | $ 6,146.86 | 6,146.86 | $ 6,146.86 | 6,146.86 | $ 6,146.86 | 6,146.86 | 6,146.86 | $ 6,146.86 | 6,146.86 | $ 73,762.32 |
| Class 1-L (US Bank) | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| Class 2-A (Unsecured Claims) | $    - | $    - | $    - | $    - | $    - | $ 40,784.96 | $    - | $    - | $    - | $    - | $    - | 40,784.96 | $ 81,569.92 |
| Class 2-B (Insider Claims) | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - | $    - |
| **Total Plan Payments** | $ 106,184.38 | $ 106,184.38 | $ 114,619.75 | $ 106,184.38 | $ 106,184.38 | $ 280,698.58 | $ 95,639.66 | $ 95,639.66 | $ 104,075.03 | $ 95,639.66 | $ 95,639.66 | $ 374,704.28 | $ 1,681,393.80 |
| | | | | | | | | | | | | | |
| **Net Income** | $ (15,184.38) | $ (15,184.38) | $ (20,619.75) | $ 56,815.62 | $ 68,315.62 | $ (116,198.58) | $ 97,360.34 | $ 97,360.34 | $ (1,075.03) | $ 78,860.34 | $ 67,360.34 | $ (239,704.28) | |
| | | | | | | | | | | | | | |
| **Ending Cash Balance** | $ 88,515.19 | $ 73,330.81 | $ 52,711.06 | $ 109,526.68 | $ 177,842.30 | $ 61,643.72 | $ 159,004.06 | $ 256,364.40 | $ 255,289.37 | $ 334,149.71 | $ 401,510.05 | $ 161,805.77 | |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
Dated: July 15, 2025

| 2028 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | 161,805.77 | 254,266.11 | 346,726.45 | 404,198.39 | 502,805.59 | 619,912.79 | 225,639.03 | 361,246.23 | 496,853.43 | 519,472.06 | 683,083.53 | 809,695.00 | |
| | | | | | | | | | | | | | |
| **Projected Revenue** | | | | | | | | | | | | | |
| Accounts Receivable | 1,200,000.00 | 1,200,000.00 | 1,200,000.00 | 1,200,000.00 | 1,250,000.00 | 1,250,000.00 | 1,300,000.00 | 1,300,000.00 | 1,300,000.00 | 1,300,000.00 | 1,200,000.00 | 1,200,000.00 | 14,900,000.00 |
| **Total Projected Revenue** | 1,200,000.00 | 1,200,000.00 | 1,200,000.00 | 1,200,000.00 | 1,250,000.00 | 1,250,000.00 | 1,300,000.00 | 1,300,000.00 | 1,300,000.00 | 1,300,000.00 | 1,200,000.00 | 1,200,000.00 | 14,900,000.00 |
| | | | | | | | | | | | | | |
| **Projected Operating Expenses** | | | | | | | | | | | | | |
| Payroll-Current Includes Net Pay and Payroll Taxes | 528,000.00 | 528,000.00 | 528,000.00 | 528,000.00 | 550,000.00 | 550,000.00 | 572,000.00 | 572,000.00 | 572,000.00 | 572,000.00 | 528,000.00 | 528,000.00 | 6,556,000.00 |
| Commercial Insurance | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 51,000.00 | 612,000.00 |
| Utilities | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 10,600.00 | 127,200.00 |
| Kildeer Shop Rent | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 8,100.00 | 97,200.00 |
| Watford Shop Rent | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 57,600.00 |
| Kildeer Housing Rent/Utilities | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 6,300.00 | 75,600.00 |
| Watford Housing Rent/Utilities | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 2,400.00 | 28,800.00 |
| Fuel-Diesel | 180,000.00 | 180,000.00 | 180,000.00 | 180,000.00 | 187,500.00 | 187,500.00 | 195,000.00 | 195,000.00 | 195,000.00 | 195,000.00 | 180,000.00 | 180,000.00 | 2,235,000.00 |
| Parts for Maintenance and Repairs | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 106,100.00 | 1,273,200.00 |
| Software/Technology/IT | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 8,600.00 | 103,200.00 |
| Workers Comp - ND WSI | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 190,800.00 |
| Subcontractors/Brokerage | 48,000.00 | 48,000.00 | 48,000.00 | 48,000.00 | 50,000.00 | 50,000.00 | 52,000.00 | 52,000.00 | 52,000.00 | 52,000.00 | 48,000.00 | 48,000.00 | 596,000.00 |
| Equipment Leases | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 16,900.00 | 202,800.00 |
| Reimburseable Expenses | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 15,900.00 | 190,800.00 |
| Miscellaneous | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 4,300.00 | 51,600.00 |
| Legal Counsel | - | - | 10,000.00 | - | - | 10,000.00 | - | - | 10,000.00 | - | - | 10,000.00 | 40,000.00 |
| Financial Advisor | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 60,000.00 |
| Tax preparation | - | - | 5,000.00 | - | - | - | - | - | - | - | - | - | 5,000.00 |
| Licenses | - | - | - | - | - | - | - | - | 80,000.00 | - | - | - | 80,000.00 |
| **Total Operating Expenses** | 1,011,900.00 | 1,011,900.00 | 1,026,900.00 | 1,011,900.00 | 1,043,400.00 | 1,053,400.00 | 1,074,900.00 | 1,074,900.00 | 1,164,900.00 | 1,074,900.00 | 1,011,900.00 | 1,021,900.00 | 12,582,800.00 |
| | | | | | | | | | | | | | |
| **Plan Payments** | | | | | | | | | | | | | |
| Administrative Expense Claims | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Priority Claims | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 100,000.00 | 144,000.00 |
| Class 1-A (First International) | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 43,848.58 | 143,848.58 | 626,182.96 |
| Class 1-B (QuickBridge) | - | - | 23,619.04 | - | - | 23,619.04 | - | - | 23,619.04 | - | - | 23,619.04 | 94,476.16 |
| Class 1-C (Samson) | - | - | - | - | - | 131,939.25 | - | - | - | - | - | 131,939.25 | 263,878.50 |
| Class 1-D (IRS) | - | - | - | - | - | - | 231,624.77 | - | - | - | - | 231,624.77 | 463,249.54 |
| Class 1-E (CIT) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1-F (Martin) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 1-G (Volvo) | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 28,004.27 | 27,373.80 | - | - | - | 251,407.96 |
| Class 1-H (Bell Bank) | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 3,922.79 | 47,073.48 |
| Class 1-I (BMO) | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 3,978.08 | 47,736.96 |
| Class 1-J (De Lage) | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 5,739.08 | 68,868.96 |
| Class 1-K (Balboa) | 6,146.86 | 6,146.86 | 2,516.22 | - | - | - | - | - | - | - | - | - | 14,809.94 |
| Class 1-L (US Bank) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Class 2-A (Unsecured Claims) | - | - | - | - | - | 114,197.90 | - | - | - | - | - | 114,197.90 | 228,395.80 |
| Class 2-B (Insider Claims) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Plan Payments** | 95,639.66 | 95,639.66 | 115,628.06 | 89,492.80 | 89,492.80 | 590,873.76 | 89,492.80 | 89,492.80 | 112,481.37 | 61,488.53 | 61,488.53 | 758,869.49 | 2,250,080.26 |
| | | | | | | | | | | | | | |
| **Net Income** | 92,460.34 | 92,460.34 | 57,471.94 | 98,607.20 | 117,107.20 | (394,273.76) | 135,607.20 | 135,607.20 | 22,618.63 | 163,611.47 | 126,611.47 | (580,769.49) | |
| | | | | | | | | | | | | | |
| **Ending Cash Balance** | 254,266.11 | 346,726.45 | 404,198.39 | 502,805.59 | 619,912.79 | 225,639.03 | 361,246.23 | 496,853.43 | 519,472.06 | 683,083.53 | 809,695.00 | 228,925.51 | |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
Dated: July 15, 2025

| 2029 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 228,925.51 | $ 362,636.98 | $ 496,348.45 | $ 593,570.16 | $ 746,281.66 | $ 917,993.16 | $ 224,117.20 | $ 418,751.46 | $ 613,385.72 | $ 677,530.19 | $ 872,164.45 | $ 1,067,889.03 | |
| | | | | | | | | | | | | | |
| **Projected Revenue** | | | | | | | | | | | | | |
| Accounts Receivable | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,250,000.00 | $ 1,250,000.00 | $ 1,300,000.00 | $ 1,300,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,300,000.00 | $ 15,550,000.00 |
| **Total Projected Revenue** | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,250,000.00 | $ 1,250,000.00 | $ 1,300,000.00 | $ 1,300,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,350,000.00 | $ 1,300,000.00 | $ 15,550,000.00 |
| | | | | | | | | | | | | | |
| **Projected Operating Expenses** | | | | | | | | | | | | | |
| Payroll-Current Includes Net Pay and Payroll Taxes | $ 516,000.00 | $ 516,000.00 | $ 537,500.00 | $ 537,500.00 | $ 559,000.00 | $ 559,000.00 | $ 580,500.00 | $ 580,500.00 | $ 580,500.00 | $ 580,500.00 | $ 580,500.00 | $ 559,000.00 | $ 6,686,500.00 |
| Commercial Insurance | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 52,000.00 | $ 624,000.00 |
| Utilities | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 10,800.00 | $ 129,600.00 |
| Killdeer Shop Rent | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 8,300.00 | $ 99,600.00 |
| Watford Shop Rent | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 4,900.00 | $ 58,800.00 |
| Killdeer Housing Rent/Utilities | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 6,400.00 | $ 76,800.00 |
| Watford Housing Rent/Utilities | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 28,800.00 |
| Fuel-Diesel | $ 180,000.00 | $ 180,000.00 | $ 187,500.00 | $ 187,500.00 | $ 195,000.00 | $ 195,000.00 | $ 202,500.00 | $ 202,500.00 | $ 202,500.00 | $ 202,500.00 | $ 202,500.00 | $ 195,000.00 | $ 2,332,500.00 |
| Parts for Maintenance and Repairs | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 108,200.00 | $ 1,298,400.00 |
| Software/Technology/IT | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 8,800.00 | $ 105,600.00 |
| Workers Comp - ND WSI | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 194,400.00 |
| Subcontractors/Brokerage | $ 48,000.00 | $ 48,000.00 | $ 50,000.00 | $ 50,000.00 | $ 52,000.00 | $ 52,000.00 | $ 54,000.00 | $ 54,000.00 | $ 54,000.00 | $ 54,000.00 | $ 54,000.00 | $ 52,000.00 | $ 622,000.00 |
| Equipment Leases | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 17,200.00 | $ 206,400.00 |
| Reimburseable Expenses | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 16,200.00 | $ 194,400.00 |
| Miscellaneous | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 4,400.00 | $ 52,800.00 |
| Legal Counsel | $ - | $ - | $ 10,000.00 | $ - | $ - | $ - | $ 10,000.00 | $ - | $ - | $ 10,000.00 | $ - | $ 10,000.00 | $ 40,000.00 |
| Financial Advisor | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 60,000.00 |
| Tax preparation | $ - | $ - | $ 5,000.00 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Licenses | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 80,000.00 | $ - | $ - | $ - | $ - | $ 80,000.00 |
| **Total Operating Expenses** | $ 1,004,800.00 | $ 1,004,800.00 | $ 1,050,000.00 | $ 1,035,000.00 | $ 1,066,800.00 | $ 1,076,800.00 | $ 1,097,800.00 | $ 1,097,800.00 | $ 1,187,800.00 | $ 1,097,800.00 | $ 1,097,800.00 | $ 1,076,800.00 | $ 12,895,600.00 |
| | | | | | | | | | | | | | |
| **Plan Payments** | | | | | | | | | | | | | |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Priority Claims | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 100,000.00 | $ 144,000.00 |
| Class 1-A (First International) | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 143,848.58 | $ 626,182.96 |
| Class 1-B (QuickBridge) | $ - | $ - | $ 40,489.79 | $ - | $ - | $ 40,489.79 | $ - | $ - | $ 40,489.79 | $ - | $ - | $ 40,489.79 | $ 161,959.16 |
| Class 1-C (Samson) | $ - | $ - | $ - | $ - | $ - | $ 226,181.57 | $ - | $ - | $ - | $ - | $ - | $ 226,181.57 | $ 452,363.14 |
| Class 1-D (IRS) | $ - | $ - | $ - | $ - | $ 397,071.04 | $ - | $ - | $ - | $ - | $ - | $ - | $ 397,071.04 | $ 794,142.08 |
| Class 1-E (CIT) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-F (Martin) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-G (Volvo) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-H (Bell Bank) | $ 3,922.79 | $ 3,922.79 | $ 3,922.76 | $ 3,922.76 | $ 3,922.76 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 19,613.86 |
| Class 1-I (BMO) | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 3,978.08 | $ 2,887.76 | $ - | $ 42,668.56 |
| Class 1-J (De Lage) | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 68,868.96 |
| Class 1-K (Balboa) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-L (US Bank) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 2-A (Unsecured Claims) | $ - | $ - | $ - | $ - | $ - | $ 195,767.82 | $ - | $ - | $ - | $ - | $ - | $ 195,767.82 | $ 391,535.64 |
| Class 2-B (Insider Claims) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Plan Payments** | $ 61,488.53 | $ 61,488.53 | $ 101,978.29 | $ 61,488.50 | $ 61,488.50 | $ 917,075.96 | $ 57,565.74 | $ 57,565.74 | $ 98,055.53 | $ 57,565.74 | $ 56,475.42 | $ 1,109,097.88 | $ 2,701,334.36 |
| | | | | | | | | | | | | | |
| **Net Income** | $ 133,711.47 | $ 133,711.47 | $ 97,221.72 | $ 152,711.50 | $ 171,711.50 | $ (693,875.96) | $ 194,634.26 | $ 194,634.26 | $ 64,144.47 | $ 194,634.26 | $ 195,724.58 | $ (885,897.88) | |
| | | | | | | | | | | | | | |
| **Ending Cash Balance** | $ 362,636.98 | $ 496,348.45 | $ 593,570.16 | $ 746,281.66 | $ 917,993.16 | $ 224,117.20 | $ 418,751.46 | $ 613,385.72 | $ 677,530.19 | $ 872,164.45 | $ 1,067,889.03 | $ 181,991.15 | |

**TWIN FALLS OIL SERVICE, LLC**
**FIVE-YEAR CASH FLOW PROJECTIONS**
**EXHIBIT C - PLAN**
**Dated: July 15, 2025**

| 2030 | January | February | March | April | May | June | July | August | Total |
|---|---|---|---|---|---|---|---|---|---|
| **Beginning Cash** | $ 181,991.15 | $ 318,603.49 | $ 455,215.83 | $ 594,574.12 | $ 788,186.46 | $ 1,000,798.80 | $ 773,461.55 | $ 976,073.89 | |
| | | | | | | | | | |
| **Projected Revenue** | | | | | | | | | |
| Accounts Receivable | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,300,000.00 | $ 1,350,000.00 | $ 1,400,000.00 | $ 1,400,000.00 | $ 1,400,000.00 | $ 1,400,000.00 | $ 10,650,000.00 |
| **Total Projected Revenue** | $ 1,200,000.00 | $ 1,200,000.00 | $ 1,300,000.00 | $ 1,350,000.00 | $ 1,400,000.00 | $ 1,400,000.00 | $ 1,400,000.00 | $ 1,400,000.00 | $ 10,650,000.00 |
| | | | | | | | | | |
| **Projected Operating Expenses** | | | | | | | | | |
| Payroll-Current Includes Net Pay and Payroll Taxes | $ 516,000.00 | $ 516,000.00 | $ 559,000.00 | $ 580,500.00 | $ 602,000.00 | $ 602,000.00 | $ 602,000.00 | $ 602,000.00 | $ 4,579,500.00 |
| Commercial Insurance | $ 53,000.00 | $ 53,000.00 | $ 53,000.00 | $ 53,000.00 | $ 53,000.00 | $ 53,000.00 | $ 53,000.00 | $ 53,000.00 | $ 424,000.00 |
| Utilities | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 11,000.00 | $ 88,000.00 |
| Killdeer Shop Rent | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 8,500.00 | $ 68,000.00 |
| Watford Shop Rent | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 40,000.00 |
| Killdeer Housing Rent/Utilities | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 52,000.00 |
| Watford Housing Rent/Utilities | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 2,400.00 | $ 19,200.00 |
| Fuel-Diesel | $ 180,000.00 | $ 180,000.00 | $ 195,000.00 | $ 202,500.00 | $ 210,000.00 | $ 210,000.00 | $ 210,000.00 | $ 210,000.00 | $ 1,597,500.00 |
| Parts for Maintenance and Repairs | $ 110,400.00 | $ 110,400.00 | $ 110,400.00 | $ 110,400.00 | $ 110,400.00 | $ 110,400.00 | $ 110,400.00 | $ 110,400.00 | $ 883,200.00 |
| Software/Technology/IT | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 9,000.00 | $ 72,000.00 |
| Workers Comp - ND WSI | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 132,000.00 |
| Subcontractors/Brokerage | $ 48,000.00 | $ 48,000.00 | $ 52,000.00 | $ 54,000.00 | $ 56,000.00 | $ 56,000.00 | $ 56,000.00 | $ 56,000.00 | $ 426,000.00 |
| Equipment Leases | $ 17,500.00 | $ 17,500.00 | $ 17,500.00 | $ 17,500.00 | $ 17,500.00 | $ 17,500.00 | $ 17,500.00 | $ 17,500.00 | $ 140,000.00 |
| Reimburseable Expenses | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 16,500.00 | $ 132,000.00 |
| Miscellaneous | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 4,500.00 | $ 36,000.00 |
| Legal Counsel | $ - | $ - | $ 10,000.00 | $ - | $ - | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 40,000.00 |
| Financial Advisor | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 40,000.00 |
| Tax preparation | $ - | $ - | $ 5,000.00 | $ - | $ - | $ - | $ - | $ - | $ 5,000.00 |
| Licenses | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Operating Expenses** | $ 1,009,800.00 | $ 1,009,800.00 | $ 1,086,800.00 | $ 1,102,800.00 | $ 1,133,800.00 | $ 1,143,800.00 | $ 1,143,800.00 | $ 1,143,800.00 | $ 6,486,800.00 |
| | | | | | | | | | |
| **Plan Payments** | | | | | | | | | |
| Administrative Expense Claims | | | | | | | | | $ - |
| Priority Claims | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 143,642.29 | $ 171,642.29 |
| Class 1-A (First International) | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 43,848.58 | $ 802,452.23 | $ 1,109,392.29 |
| Class 1-B (QuickBridge) | $ - | $ - | $ 20,254.06 | $ - | $ - | $ 20,254.06 | $ - | $ - | $ 40,508.12 |
| Class 1-C (Samson) | $ - | $ - | $ - | $ - | $ - | $ 113,141.96 | $ - | $ - | $ 113,141.96 |
| Class 1-D (IRS) | $ - | $ - | $ - | $ - | $ - | $ 198,625.36 | $ - | $ - | $ 198,625.36 |
| Class 1-E (CIT) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-F (Marlin) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-G (Volvo) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-H (Bell Bank) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-I (BMO) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-J (De Lage) | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 5,739.08 | $ 11,478.16 | $ 51,651.72 |
| Class 1-K (Balboa) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 1-L (US Bank) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Class 2-A (Unsecured Claims) | $ - | $ - | $ - | $ - | $ - | $ 97,928.21 | $ - | $ - | $ 97,928.21 |
| Class 2-B (Insider Claims) | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Plan Payments** | $ 53,587.66 | $ 53,587.66 | $ 73,841.72 | $ 53,587.66 | $ 53,587.66 | $ 483,537.25 | $ 53,587.66 | $ 957,572.68 | $ 771,729.61 |
| | | | | | | | | | |
| **Net Income** | $ 136,612.34 | $ 136,612.34 | $ 139,358.29 | $ 193,612.34 | $ 212,612.34 | $ (227,337.25) | $ 202,612.34 | $ (701,372.68) | |
| | | | | | | | | | |
| **Ending Cash Balance** | $ 318,603.49 | $ 455,215.83 | $ 594,574.12 | $ 788,186.46 | $ 1,000,798.80 | $ 773,461.55 | $ 976,073.89 | $ 274,701.21 | |